

1  ANNETTE L. HURST (Bar No. 148738)
2  Annette.Hurst@hellerehrman.com
   ELISABETH R. BROWN (Bar No. 234879)
3  Elisabeth.Brown@hellerehrman.com
   HELLER EHRMAN LLP
4  333 Bush Street
   San Francisco, CA 94104
5  Telephone: +1 (415) 772-6000
   Facsimile: +1 (415) 772-6268
6
7  JOHN C. ULIN (Bar No. 165524)
8  John.Ulin@hellerehrman.com
   ANNA R. ZUSMAN (Bar No. 232753)
9  Anna.Zusman@hellerehrman.com
   333 South Hope Street, 39th Floor
10 Los Angeles, CA 90071
11 Telephone: +1 (213) 689-0200
   Facsimile: +1 (213) 614-1868
12 Attorneys for Plaintiff
13 WHAM-O, INC.

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16 WHAM-O, INC., a Delaware corporation,

17                                    Plaintiff,

18         v.

19
20 MANLEY TOYS, LTD., a Hong Kong
   corporation, IZZY HOLDINGS, LLC, a
21 California limited liability company,
   AQUAWOOD, LLC, a California limited
22 liability company, A.W. COMPUTER
   HOLDINGS, LLC, a California limited liability
23 company, BRIAN DUBINSKY, SAMSON
   CHAN, LISA LIU, and WAL-MART STORES,
24 INC., a Delaware corporation,
25
26                                    Defendants.
27
28

Case No.:

**CV08-01281 PSG (Ex)**

**COMPLAINT FOR JUDGMENT DEBTOR'S INTEREST IN DEBT TO SATISFY MONEY JUDGMENT, TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, TRADEMARK DILUTION AND UNFAIR COMPETITION**

**JURY TRIAL DEMANDED**

Plaintiff Wham-O, Inc. ("WHAM-O") by and for its complaint against Defendants Manley Toys, Ltd. ("Manley" or "Manley Toys"), Aquawood, LLC, A.W. Computer Holdings, LLC, Izzy Holdings, LLC, Brian Dubinsky, Samson Chan, and Lisa Liu, and WAL-MART STORES, INC. a Delaware corporation, alleges as follows:

## INTRODUCTION

1.    On October 15, 2007 a jury in the District Court for the Central District of California awarded WHAM-O a $6 million verdict against SLB Toys USA, Inc. dba Toyquest ("SLB") for willful trademark infringement, willful trademark dilution, and willful false advertising in connection with SLB's unauthorized use of WHAM-O's registered trademark in the color yellow for water slide toys, Reg. No. 1,432,069 ("YELLOW WATER SLIDE MARK"). Following the verdict, but before the Court entered judgment, SLB initiated an elaborate scheme designed to evade judgment and deprive WHAM-O of its award, purporting to divest itself of all of its assets and liabilities through an unsupervised, unregulated Assignment for Benefit of Creditors ("ABC") under state law. On or about December 7, 2007, this Court entered its judgment and permanent injunction against SLB, restraining SLB and all those acting in concert with it from further infringement of Wham-O's YELLOW WATER SLIDE MARK. Wham-O thereafter served that judgment and permanent injunction upon Manley Toys Ltd., Chan and Liu personally. Dubinsky has evaded service of the judgment and permanent injunction, but Wham-O is informed and believes and thereupon alleges that Dubinsky has actual knowledge of the terms thereof because retailers have reported to Wham-O that Dubinsky has falsely assured them that they need not comply with that permanent injunction.

2.    In fact, Dubinsky, Chan, Liu and Manley have flagrantly disregarded the terms of this Court's injunction by continuing to sell and distribute to retailers unauthorized slides bearing the YELLOW WATER SLIDE MARK as well as advertising in the form of product packaging on numerous products bearing depictions of unauthorized slides bearing the YELLOW WATER SLIDE MARK. Wham-O has provided Defendants Wal-Mart, Toys 'R Us, Target and Kmart with copies of the permanent injunction, and requested that they

1   cease selling the products that violate the injunction and otherwise infringe Wham-O's

2   YELLOW WATER SLIDE MARK.

3        3.   Both from the evidence given at the October trial in the prior action and from

4   evidence that has emerged as a result of the ABC, it is apparent that SLB was nothing more

5   than an undercapitalized shell corporation that failed to follow even the most basic

6   corporate formalities and that Dubinsky, Chan, Liu, Manley and Izzy Holdings LLC

7   ("Izzy") are its alter egos.  SLB was simply the United States division of the overall

8   enterprise known as Manley Toyquest,  run by Chan, Liu and Dubinsky.  Izzy holds real

9   property for the enterprise in the United States, and owns the property at the locations where

10   SLB conducted its principal place of business.  Izzy is owned by Chan and Dubinsky, and

11   has failed to observe corporate formalities.  In fact, there was no lease between SLB and

12   Izzy, and SLB paid many of the property related expenses that Izzy, as the landlord, would

13   otherwise have been expected to pay.

14        4.   Additionally, Dubinsky, Chan and Liu have started a new enterprise in the

15   United States that simply replaces SLB's former operations, retaining the same employees,

16   assets and business, and at the same location still owned by Chan and Dubinsky through

17   Izzy, such enterprise being conducted in the name of AW Computer Holdings LLC ("AW")

18   and Aquawood LLC (collectively, "Aquawood").  Equity demands that the true owners

19   behind SLB—Brian Dubinsky, Samson Chan, Lisa Liu, Manley and Izzy—be held liable

20   for the judgment as SLB's alter egos, and that Aquawood be held liable as its successor.

21   They are the true judgment debtors as well as SLB.

22        5.   Accordingly, WHAM-O files this creditor's suit against Defendant Wal-Mart

23   pursuant to California Code of Civil Procedure Section 708.210.  Wham-O is informed and

24   believes and thereupon states that Wal-Mart holds several million dollars in funds that are

25   payable to the true judgment debtor, Manley.  In all respects, Wal-Mart has been a

26   responsible corporate entity in connection with WHAM-O's trademarks since being

27   provided notice of the judgment and permanent injunction.  It promptly complied upon

28   receiving notice of the permanent injunction, pulling infringing products from its shelves,

and is now selling only authorized products pursuant to a license. WHAM-O brings this action against Wal-Mart only insofar as Wal-Mart is in possession of funds payable to the judgment debtor.

6.    In the alternative, WHAM-O brings these Lanham Act claims against the alter egos and joint tortfeasors Manley, Dubinsky, Chan and Liu for willful trademark infringement, trademark dilution, and false advertising in violation of the Lanham Act premised upon their role in the same acts that this Court has already adjudged and decreed was willful infringement, intentional false advertising, and willful dilution.

## THE PARTIES

7.    Plaintiff Wham-O, Inc. is a corporation organized and existing under the laws of the State of Delaware and has a principal place of business at 5903 Christie Avenue, Emeryville, California 94608.

8.    Upon information and belief, Defendant Manley Toys, Ltd. is a corporation organized and existing under the laws of Hong Kong, with its principal place of business in Hong Kong at 828 Cheung Sha Wan Road and its principal place of business in the United States at 2228-2229 Barry Avenue, Los Angeles, California. Manley regularly conducts business in this District and elsewhere throughout the United States through the operations of judgment debtor SLB dba Toyquest and its successor Aquawood LLC dba Toyquest. Manley has entered into contracts with United States retailers that provide for the shipment of infringing and contemptuous product into this District and elsewhere throughout the United States, and Manley delivered such product to retailers in Hong Kong with the knowledge and intent that such infringing and contemptuous product be placed on retail store shelves and sold to consumers throughout this District and elsewhere in the United States.

9.    Upon information and belief, Defendant Izzy Holdings, LLC is a limited liability company organized and existing under the laws of the State of California owned by Brian Dubinsky and Samson Chan, and has a principal place of business at 2228-2229 Barry Avenue, Los Angeles, California.

10.   Upon information and belief, Defendant Aquawood, LLC is a limited liability company organized and existing under the laws of the State of California and has a principal place of business at 2228-2229 Barry Avenue, Los Angeles, California.

11.   Upon information and belief, Defendant AW Computer Holdings, LLC is a limited liability company organized and existing under the laws of the State of California and has a principal place of business at 2228-2229 Barry Avenue, Los Angeles, California.

12.   Upon information and belief, Brian Dubinsky is a resident of California, residing at 521 S. Bentley Ave., Los Angeles, CA 90049 and regularly conducts business in this District, with his principal place of business at 2228-2229 Barry Avenue, Los Angeles, California.

13.   Upon information and belief Samson Chan is a resident of Hong Kong, residing at Flat B, 11/F, Sunpeace Court, 136-142 Boundary Street, Kowloon, Hong Kong, and regularly conducts business within this District.  Chan's business card states that his offices in the United States are located at 2228 Barry Avenue, Los Angeles, California. Throughout the period of infringement alleged by this Complaint, Chan was the Chief Executive Officer of SLB, the judgment debtor.

14.   Upon information and belief, Lisa Liu is a resident of Hong Kong, residing at Flat F, 5/F, The Astrid Tower 2, 180 Argyle Street, Kowloon, Hong Kong, and regularly conducts business within this District.  Liu is the Managing Director of Manley, and throughout the period of infringement alleged by this Complaint was the sole Director of SLB, the judgment debtor.  Throughout the period of infringement alleged by this Complaint, Liu owned 50% or more of SLB, the judgment debtor, whose principal place of business was located in this District at 2228 Barry Avenue, Los Angeles, California.  Liu also signed and sent royalty statements into this District on behalf of judgment debtor SLB and Manley reporting and attesting to a licensor, Six Flags, the accuracy of the sales of the infringing product.

15.   Upon information and belief, Defendant Wal-Mart Stores, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of

1  business at 702 SW 8th Street, Bentonville, Arkansas 72716.

## NATURE OF THE CASE

16.  This is an action for:  (i) judgment debtor's interest in debt to satisfy money judgment pursuant to Cal. Civ. Proc. Code 708.210 *et seq.*; (ii) infringement of a registered trademark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; (iii) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iv) trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and (v) unfair competition in violation of the common law of the State of California; (vi) contributory trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; (vii) contributory false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (viii) contributory trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

## JURISDICTION AND VENUE

17.  This Court subject matter jurisdiction over the federal law claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1131, 1138, and 1367 and has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  Venue is proper within this district under the provisions of 28 U.S.C. §1391.

## BACKGROUND FACTS COMMON TO ALL CLAIMS

### A.    Wham-O's Trademarks

18.  WHAM-O and its predecessors have long engaged in the business of manufacturing and marketing in interstate commerce toys called "water slides" sold under the SLIP 'N SLIDE trademark.  SLIP 'N SLIDE is a registered trademark of Wham-O, U.S. Reg. No. 761,883, attached hereto as Exhibit 1.

19.  Since the introduction to the public of the SLIP 'N SLIDE water slide toy in 1961, the sliding surface of one or more versions of WHAM-O's SLIP 'N SLIDE water slide toy has continuously been colored yellow, and that color has long served to identify and distinguish WHAM-O's water slide toys from those of others.  Wham-O and its predecessors have sold millions of yellow water slides under the SLIP 'N SLIDE trademark,

and Wham-O has consistently promoted the YELLOW mark on its packaging, creating a direct consumer association between the SLIP 'N SLIDE word mark and the YELLOW color mark.

20.   WHAM-O has widely promoted the SLIP 'N SLIDE YELLOW WATER SLIDE toy, including significant expenditures on marketing efforts, including television advertising.  The product has been sold by all of the nation's largest discount toy retailers, including Wal-Mart, Target, and Toys "R" Us.  Over more than four decades of use, promotion and sales, the YELLOW WATER SLIDE MARK has become famous.  In 2003, the fame of the SLIP 'N SLIDE YELLOW WATER SLIDE toy was further recognized when it was included as an iconic toy of youth in the Paramount film, *Dickie Roberts: Former Child Star*.

21.   A registration for the color yellow on water slide toys duly issued from the United States Patent and Trademark Office on March 10, 1987, and WHAM-O is the owner of Reg. No. 1,432,069 for that mark.  A copy of the registration for the YELLOW WATER SLIDE MARK is attached as Exhibit 2.  As a result of lengthy use and compliance with statutory requirements, this registration has attained incontestable status.  The goodwill associated with the SLIP 'N SLIDE and YELLOW WATER SLIDE trademarks, and the registrations therefore, were duly assigned to Wham-O in 1997.

22.   In sum, WHAM-O's water slide toys using the YELLOW WATER SLIDE MARK are well and favorably known by the purchasing public.  They have become iconic toys, a symbol of summer fun, and famous to children and adults alike.

**B.**    **The Underlying Lawsuit**

23.   In March 2005, WHAM-O learned that SLB had manufactured, distributed, marketed, advertised, sold, and offered for sale water slide toys in packaging that infringed the YELLOW WATER SLIDE MARK.  Shortly after learning of this infringement, WHAM-O notified SLB of its infringement and demanded that SLB cease and desist.  In response, counsel for SLB represented to WHAM-O's counsel that SLB had sold all of its inventory in the infringing packaging and that it would not use the infringing packaging in

the future.  Almost a year later, in February 2006, WHAM-O learned that SLB was again manufacturing, distributing, advertising, marketing, selling, and offering for sale water slide toys in packaging identical to the infringing packaging SLB promised to stop using.  In addition, SLB was marketing and selling new water slide toy products that infringed and diluted WHAM-O's YELLOW WATER SLIDE MARK.  After learning of SLB's renewed and expanded infringement, WHAM-O sent a new cease and desist letter.  SLB refused to stop its infringing actions, and instead brought an action for, *inter alia*, trademark infringement and declaratory relief in the Central District of California, to which WHAM-O counterclaimed for, *inter alia*, willful infringement, willful dilution, intentional false advertising, and unfair competition.  SLB's frivolous claims were all subsequently dismissed by the Court, without compensation to SLB.

24.  Beginning on October 2, 2007, WHAM-O tried its counterclaims against SLB for trademark infringement, trademark dilution, false advertising and unfair competition to a jury for six days (hereinafter, "the Color case") and SLB tried its claim for invalidity of Wham-O's YELLOW WATER SLIDE MARK.  Wham-O obtained a jury verdict against SLB for willful infringement, willful dilution, and willful false advertising under the Lanham Act, and the jury specifically rejected SLB's invalidity defense.  With respect to infringement, the jury found that SLB acted "intentionally, knowing it was an infringement, or with an aura of deliberate indifference or willful blindness to Wham-O's rights, or used the trademark for the purpose of trading upon Wham-O's reputation."  With respect to dilution, the jury found that SLB "intended to trade on Wham-O's reputation or to cause dilution of the famous mark."  Finally, with respect to false advertising, the jury found that SLB made "a false statement with the intention to deceive the consuming public, or otherwise acted in bad faith in conducting false advertising, then the false advertising was willful."  Attached hereto as Exhibit 3 is the jury's verdict in the Color case.

25.  The jury awarded WHAM-O damages of $3.6 million and recommended enhanced damages award of $2.4 million because of SLB's willful conduct.  The Court accepted the jury's enhanced damages award and entered judgment adjudicating the

YELLOW WATER SLIDE MARK valid, willfully infringed and intentionally diluted, awarded $6 million plus costs, and granted a permanent injunction.  A true and correct copy of that Judgment, entered on December 5, 2007, is attached hereto as Exhibit 4. Accordingly, the YELLOW WATER SLIDE MARK has been adjudged and decreed both valid and famous by this Court.

### C.   **ABC Process, Alter Ego & Successor Liability**

26.   During the trial of the Color case, testimony was given by Dubinsky and statements were made by SLB's attorneys to the jury that suggested an alter ego relationship with Manley.  Shortly after the trial, Wham-O took deposition testimony from Dubinsky in another action by Wham-O against SLB (the "Wave Rider case") pending in this District, Case No. 06-6508 RSWL (CWx), and Dubinsky's testimony in that deposition further suggested that Dubinsky, Manley and Izzy were alter egos of SLB.

27.   After the jury verdict and the deposition in the Wave Rider case, but before the Court entered judgment, SLB initiated a fraudulent transaction designed to deprive WHAM-O of the benefits of its judgment and to avoid the effects of the permanent injunction. Sometime in mid-October, SLB's President, Brian Dubinsky, and SLB's in-house counsel, Joshua Furman, met with attorney Ron Bender of the firm Levene Neale Bender Rankin & Brill.  During the course of that meeting, Bender contacted attorney Byron Moldo of the firm Moldo Davidson Fraioli Seror & Sestanovich LLP to ascertain whether Moldo would be willing to serve as an Assignee of SLB in a process pursuant to state law called an Assignment for Benefit of Creditors ("ABC"), whereby SLB would divest itself of its assets and cease to operate as a going concern.  Mr. Moldo agreed with Mr. Bender that he would meet with the representatives of SLB to discuss the ABC process, and Moldo, Dubinsky and Furman met the same afternoon.

28.   Unlike bankruptcy or a receivership, the ABC process is unsupervised by a Court.  SLB concealed its intention to enter into the ABC process from Wham-O and from this Court in two pending actions (the Color case and Wave Rider case) as well as concealing the process from the Court in Alameda County, where a third action by Wham-

O for misappropriation of trade secrets is pending and a preliminary injunction *prohibiting the transfer of evidence and requiring the preservation of evidence* has been entered. A true and correct copy of the Alameda Court's order is attached hereto as Exhibit 5.

29. At the initial meeting with Moldo, Dubinsky and Furman explored not only the divestiture of assets and liabilities, but also proposed that Dubinsky would re-purchase all, or substantially all, of SLB's assets simultaneously with the ABC transaction. During this initial meeting and at all times thereafter until the General Assignment was executed, Furman and Dubinsky concealed from Moldo the pendency of the Alameda County Superior Court action and concealed from him the existence of the preliminary injunction in that action. After the initial meeting between Dubinsky, Furman and Moldo, Bender informed Moldo (to his surprise) that Bender would be representing not SLB, but the purchaser of the assets in dual transactions.

30. The irregular and fraudulent nature of these dual transactions was then borne out in a further series of events. Dubinsky breached his fiduciary duty to SLB by negotiating the commercial terms of *both* sides of the transaction—both the Assignment by SLB and the Asset Purchase Agreement on behalf of purported purchaser Aquawood. Bender and his colleague, Monica Kim, improperly acted on both sides of the transaction, negotiating the terms of the Asset Purchase, insisting that the General Assignment by SLB was contingent upon Moldo's advance agreement to the terms of the Asset Purchase Agreement, and then offering edits to both sets of transaction documents. Eventually, on November 19, 2007, various parties executed a General Assignment, and as Asset Purchase Agreement. A true and correct copy of the General Assignment with exhibits is attached as Exhibit 6. A true and correct copy of the Asset Purchase Agreement is attached as Exhibit 7. Whatever the name and form of the purchaser entity, Dubinsky and the other participants in the Manley Toyquest enterprise were the real parties in interest on both sides of the transaction whereby they attempted to divest SLB of its liabilities, and the Wham-O judgment in particular, and continue the business under a different name using SLB's assets, employees, contracts and property.

31.   Moldo thus purportedly became SLB's Assignee.  Under the Asset Purchase Agreement, AW purported to purchase not only all of the tangible assets of SLB, and to assume all of the contracts necessary for Dubinsky to continue operating his business without disruption (such as utilities at the Barry Avenue location and health insurance for the employees), but AW also purported—in a theretofore unheard of transaction to Moldo who has been practicing in this area for 25 years—to purchase the "appellate rights" to the judgment in the Color case *while not assuming the liability therefor.*

32.   This transaction on its face violated California Civil Code Section 3521, which provides that "he who takes the benefit must bear the burden."  Since purchasing this purported assignment of appellate rights, AW/Aquawood, acting through Dubinsky, instructed attorney Furman to file various pleadings in the name of SLB (rather than AW/Aquawood) that were not authorized by Assignee Moldo.  Furman filed such pleadings at Dubinsky's instruction, including without limitation, a motion for new trial, opposition to motion for attorneys's fees, application to quash subpoena, and various letters to the Court submitted in connection with these papers.  By taking these actions pursuant to the assignment of appellate rights, AW/Aquawood has sought to obtain the benefits of that assignment which are avoidance of the judgment.  As such, by operation of law, AW/Aquawood also assumed the liability of the underlying judgment associated therewith and has become a judgment debtor.  Civ. Code §3521; *Fanning v. Yoland Prods.*, 150 Cal.App.2d 444, 448 (1957).  AW/Aquawood also is a successor and judgment debtor because it is a mere continuation of Toyquest, and because of the fraudulent ABC transaction.

33.   Both before and after the General Assignment, Moldo requested various documents from SLB.  SLB was unable to produce any corporate minute book or any evidence whatsoever of any meeting or action by the Board of Directors of SLB.  SLB provided Moldo no insurance policy covering liability arising from its toy design or distribution operations.  SLB claimed to have no financial computer.  SLB provided no documentary evidence of the ownership of the stock of the corporation.  SLB provided no

corporate filings of any kind to Moldo prior to the Assignment.  SLB refused to provide a list of its employees, necessitating Moldo to approach ADP in order to provide W-2s and 1099s for 2007.  SLB's failure to provide information in response to Moldo's requests made it readily apparent that SLB had failed to observe the most basic corporate formalities.  SLB held no board meetings and kept no corporate minutes or written resolutions of corporate action.

34.   It also became apparent that SLB was woefully undercapitalized.  Dubinsky testified at trial in the Color case that Toyquest was the seventh largest toy company in the world, but the financials provided by SLB to Moldo that SLB did not maintain sufficient unencumbered capital to meet its recurring and/or prospective liabilities, and instead relied on monthly infusions of cash from Manley to meet its on-going obligations, including payroll and royalty payments.  Upon information and belief, there are no documents evidencing any issuance of stock by SLB or that the shareholders made any initial capital contribution.

35.   As part of his duties as SLB's assignee for the benefit of SLB's creditors, Moldo has endeavored to discover the extent and value of SLB's intangible assets, including any intellectual property owned by SLB, such as the Toyquest trade name and any toy designs created by SLB and its employees prior to the ABC.  After the assignment, Moldo directed his field agent, Tony Shokrai, to obtain copies of the hard drives from the computers used by SLB and its employees, which he believed contained important corporate records, as well as the only evidence of the intellectual property owned by SLB.  Dubinsky, however, refused to permit Shokrai any access to the computers, their hard drives, or the contents thereof.  Nonetheless, these computers were transferred to AW through the asset purchase agreement, and the contents of those computers is currently in use by Aquawood at the 2228-2229 Barry Avenue address.

36.   Aquawood, and SLB d/b/a Toyquest before it, is nothing more than a common enterprise engaged in by Defendants Dubinsky, Chan, and Liu acting through a variety of entities, including Manley, SLB, Izzy, Aquawood and AW Computer Holdings.  Dubinsky,

Chan and Liu were in true control and ownership of SLB and its assets at all times relevant to the infringement in the Color case, and are presently in true control of Aquawood and AW.

37.   One purpose of this common enterprise was to trade on WHAM-O's goodwill by manufacturing, selling, distributing, marketing, and offering for sale water slide toys that infringed WHAM-O's YELLOW WATER SLIDE MARK.   SLB's attorney in the Color case admitted in opening argument that "SLB and Manley work hand in hand.   Manley makes the products.   SLB assists in the design.   They market, and they are a sales agent for Manley."

38.   The overlapping connections between Manley and SLB are extensive. According to SLB's 2006 tax returns signed by Dubinsky under penalty of perjury and filed on or about September 12, 2007, the shareholders of SLB are Lisa Liu and Alan Chan (son of Samson Chan), each purportedly owning 50% of the stock in SLB.   (In contrast, the Consent of Stockholders signed by Liu in connection with the General Assignment just two months later claimed that she was the sole stockholder.)   In 2003, Lisa Liu was identified in the New York state corporate filings as the Chief Financial Officer and a director for SLB. At Manley, Lisa Liu serves in the role as the Managing Director for the company.   Alan Chan, putative co-owner of SLB, is the son of Samson Chan, founder, owner and CEO of Defendant Manley.   Samson Chan also held himself out at various times as the Chief Executive Officer and corporate secretary of SLB.   The address listed for Samson Chan and Lisa Liu on SLB's corporate filings is the business address for Manley in Hong Kong.   In 2005, Dubinsky signed documents purporting to be the President of Manley, while at the same time serving as the President of SLB.   In Hong Kong, Manley's address bears the Toyquest name.

39.   In addition, SLB has held itself out to the world to be part and parcel with Manley.   Both SLB and Manley do business as Toyquest, even though SLB owns the Toyquest trademark in the United States and has not formally authorized Manley to operate under the trade name.   SLB does business under several names, including Manley, Manley

Toys, Manley Toys USA, Manley Toys USA, Inc., Manley Toyquest, Toyquest, and Toyquest a division of Manley Toys.  At trial in the Color case, Dubinsky testified that his company was the seventh largest toy company in the world, testimony that could only have been truthful if SLB and Manley are one and the same.  SLB's website at www.toyquest.com listed a Hong Kong address—the same as Manley's address.

40.  SLB's disregard for the corporate form spills over to its licensing arrangements with third parties.  SLB entered a licensing arrangement with Six Flags Theme Parks, Inc. ("Six Flags"), which permitted SLB, and only SLB, to use certain Six Flag's trademarks in connection with the sale of SLB's products.  The rights conveyed under the licensing agreement were non-transferable.  SLB, however, concedes that it neither manufactured nor sold any products bearing the Six Flags trademarks.  Instead, Defendant Manley exercised SLB's non-transferable rights, manufactured and sold the products bearing Six Flags' trademarks, prepared the royalty statements on SLB's behalf, and funneled the money to allow SLB to pay the royalties to Six Flags.  Wham-O is informed and believes and thereupon states that SLB acted in the same fashion with respect to numerous other intellectual property licensors, including Lund and Company, Blue Man Group, Disney, Warner Bros. and others.  SLB has served as nothing more than a pass-through company for Manley.

41.  Similarly, Izzy has served as nothing more than a real estate holding entity for Dubinsky and Chan for the benefit of SLB and Manley.  Izzy has been unable to produce any written lease between it and SLB as a tenant, and SLB's books and records appear to indicate that SLB paid for garbage disposal, property insurance on the building structure and premises at 2228 Barry Avenue, taxes, water and sewage, and other expenses commonly borne by the landlord.  Izzy apparently charged SLB no rent for its use of the premises.

42.  Upon information and belief, Dubinsky, acting on behalf of Defendant Manley and the entire Toyquest enterprise, directed and controlled the litigation in the Color case. As the sole Director of SLB, Liu –also the Managing Director of Manley—had the statutory

right and power to manage the affairs of SLB. As a result of Liu's power and authority over SLB and her position with Manley as Managing Director, Manley also had the *de facto* ability to control the litigation. Upon information and belief, Dubinsky communicated with Chan and/or Liu concerning material events in the Color case. As noted above, this was not the first time Dubinsky acted on behalf of Manley. In addition, in 2005, Dubinsky and Samson Chan jointly visited Wham-O to discuss a possible acquisition of Wham-O by Manley. Dubinsky introduced Chan as his partner. Dubinsky signed a proposed letter of intent for the acquisition of Wham-O giving the title President of *Manley*.

43. There is a common identity of interest between Manley and SLB dba Toyquest. They have common ownership, directors and officers. SLB has been held out to the public as a "division of Manley" and has used various versions of the name Manley as its corporate name. Manley uses Toyquest as part of its trade name. SLB has served as a mere conduit for transactions for the benefit of Manley. Manley has manufactured the infringing product designed and sold by SLB. Based on the facts set forth herein, it is apparent that maintaining the corporate fiction of a separate existence for SLB, Izzy or Manley, particularly where SLB has engaged in a fraudulent transaction to avoid Wham-O's judgment, leads to an inequitable result. Manley, Dubinsky, Chan, Liu and Izzy are the judgment debtors in the Color case.

44. Additionally, based on the facts set forth herein it is apparent that AW and Aquawood are mere continuations of SLB, and the product of fraud by SLB in connection with the General Assignment, and in all events are true judgment debtors under Civil Code Section 3521 by virtue of their assumption of the appellate rights to the judgment in the Color case under the Asset Purchase Agreement.

**D.    Wal-Mart's Accounts Payable to the Judgment Debtor(s)**

45. Upon information and belief, Wal-Mart currently has an accounts payable balance due to Manley in an amount of several million dollars.

46. Upon information and belief, Wal-Mart's outstanding balance payable to Manley is for inventory purchased from Manley bearing the Toyquest® and BANZAI

trademarks, owned in the United States by SLB, and for products and packages designed by employees of SLB and sold by employees and agents of SLB to retailers, all activities occurring prior to the General Assignment to Moldo. These products are continuing to exploit intellectual property assets owned by SLB without consent and without compensation to SLB. The payable balance at Wal-Mart due to Manley therefore includes sums owed to the judgment debtor in the Color case, SLB dba Toyquest. Accordingly, those sums are subject to lien and execution pursuant to California Code of Civil Procedure Section 708.210 *et seq.* .

47. Additionally, because Manley is an alter ego of SLB and therefore also a true judgment debtor in the Color case, the sums payable held by Wal-Mart for the benefit of Manley are subject to execution by Wham-O in connection with its judgment, and are subject to lien and execution pursuant to California Code of Civil Procedure Section 708.210 *et seq. See Fleet Credit Corp. v. TML Bus Sales, Inc.*, 65 F.3d 119 (9th Cir. 1995) (affirming district court's adjudication of alter ego issues in context creditor's suit and permitting judgment creditor to recover judgment from third party that held money of judgment debtor's alter ego).

## BACKGROUND FACTS RELATED TO LANHAM ACT CLAIMS AGAINST MANLEY TOYS, CHAN, DUBINSKY AND LIU

### A.     Defendant Manley Toys's Unlawful Activities

48. Acting in concert with SLB, Defendant Manley Toys designs, manufactures, promotes, advertises, distributes, markets, sells, and offers for sale water-related toys, including products and packaging that infringe WHAM-O's YELLOW WATER SLIDE MARK. In particular, Manley manufactured and delivered to retailers for sale in the United States the infringing products and packages that were the subject of the judgment in the Color case. Chan, Dubinsky and Liu authorized, directed, and participated in and controlled the design, manufacture, distribution and sale of those infringing products and packages.

49. As a joint tortfeasor with SLB, Manley, Dubinsky, Chan and Liu are liable for the identical conduct for which SLB was found liable in the Color case, including willful

1   trademark infringement, willful false advertising, and willful trademark dilution.

2       50.   Moreover, Defendant Manley, at the direction and authorization of Dubinsky,

3   Chan, and Liu, continues to use the YELLOW WATER SLIDE MARK in connection with

4   the manufacture and sale of water slides with actual knowledge of and in contempt of this

5   Court's permanent injunction order and in violation of the Lanham Act.  Manley knows that

6   it is violating Wham-O's trademark rights and continues to act in disregard of this rights.

7   This continued unauthorized, flagrant and unlawful use of Wham-O's mark damages the

8   value of WHAM-O's rights in the YELLOW WATER SLIDE MARK and is likely to injure

9   the business reputation of WHAM-O.

10       51.   As a direct result of Defendant Manley's willfully infringing activities, WHAM-

11   O will be irreparably injured by the confusion likely to occur, by the damage to the value of

12   WHAM-O's rights in the YELLOW WATER SLIDE MARK, and by the likely injury to its

13   business and reputation.  Manley continued use of the color yellow on water slides and

14   infringing packaging will materially and negatively affect the business, reputation and

15   goodwill of WHAM-O.

16   **FIRST CLAIM FOR RELIEF**

17   (Judgment Debtor's Interest in Property or Debt to Satisfy Money Judgment Pursuant to

18   Cal. Civ. Proc. Code § 708.210 et seq.)

19       52.   Paragraphs 1 through 51 are hereby incorporated by reference.

20       53.   On or about December 7, 2007, the District Court for the Central District of

21   California entered a $6 million money judgment against SLB in favor of WHAM-O in Case

22   No. CV 06-1382 RSWL (CWx) in the United States District Court for the Central District

23   of California.

24       54.   In light of the unity and identity of interest between SLB, Defendants Manley,

25   Dubinsky, Chan, and Liu, the severe undercapitalization of SLB, SLB's complete disregard

26   of corporate formalities, and the inequitable result that will arise if SLB is permitted to

27   maintain its corporate fiction, Defendants Manley, Dubinsky, Chan and Liu are the alter

28   egos of SLB and are judgment debtors each fully liable on the $6 million judgment entered

against SLB, in addition to any attorney's fees awarded to WHAM-O by the Court pursuant to the pending motion for fees presently under submission with the Court.  It is proper, under long-standing California law, to treat SLB's alter egos as the true judgment debtors, because "[t]hat a court may at any time amend its judgment so that the latter will properly designate the real defendants is not open to question." *Mirabito v. San Francisco Dairy Co.*, 8 Cal.App.2d 54, 57 (1935); *see also Thomson v. L. C. Roney & Co.*, 112 Cal.App.2d 420, 425 (1952) (amending judgment to add alter ego is "simply an amendment whose purpose is to designate the real name of the judgment debtor").

55.  WHAM-O's judgment in Case No. CV 06-1382 has not been satisfied, and SLB Toys has sought to evade that judgment by initiating the unsupervised and fraudulent ABC process.

56.  Plaintiff is informed and believes and on such information and belief alleges that Defendant Wal-Mart is indebted to the judgment debtor Manley in the sum of several million dollars, which can be properly garnished to satisfy WHAM-O's judgment because such property is owed by Manley, in part or in full, to SLB, and/or because such property is owned by alter ego judgment debtor Manley.

## SECOND CLAIM FOR RELIEF

(Infringement of Registered Trademarks in Violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 as to Defendant Manley Toys)

57.  Paragraphs 1 through 56 are hereby incorporated by reference.

58.  If the Court does not adjudge Manley, Dubinsky, Chan, Liu, and Izzy Holdings to be liable to WHAM-O as judgment debtors for the $6 million award in the Color Case, WHAM-O alleges in the alternative that Manley infringed, and continues to infringe, WHAM-O's YELLOW WATER SLIDE MARK in violation of the Lanham Act.

59.  The YELLOW WATER SLIDE MARK is famous and has acquired secondary meaning.  Purchasers associate the YELLOW WATER SLIDE MARK only with WHAM-O's water slide toy products.  This association is a result of extensive advertising and sales throughout the United States of goods bearing the YELLOW WATER SLIDE MARK.

60.  Defendant Manley has infringed the YELLOW WATER SLIDE MARK through the manufacture, marketing, advertising, promotion, distribution, offers to sell and sales in commerce of its competing goods utilizing an imitation of the YELLOW WATER SLIDE MARK in a manner that is likely to cause confusion, mistake or deception.

61.  Defendant Manley's activities described above constitute infringement of WHAM-O's rights in its federally registered YELLOW WATER SLIDE under 15 U.S.C. § 1114.

62.  By committing the acts alleged herein, Defendant Manley has intentionally, knowingly and willfully infringed the registered YELLOW WATER SLIDE MARK, and Defendant Manley continues to do so.

63.  Defendant Manley is presently engaged in the marketing and sale of infringing goods, and unless immediately restrained and enjoined, will continue to do so.  WHAM-O's remedy at law is not adequate to compensate it for the harm inflicted and threatened by Defendant Manley's use of confusingly similar marks in connection with its goods and services.

64.  WHAM-O has been damaged by Defendant Manley's willful and deliberate infringement in an amount to be proved at trial.  WHAM-O is entitled to recover all profits heretofore realized by Defendant Manley during its infringement of the YELLOW WATER SLIDE MARK, as well as WHAM-O's costs in this action pursuant to 15 U.S.C. § 1117(a).

65.  Defendant Manley's actions have been willful, malicious and fraudulent with knowledge of the likelihood of confusion and deception and with intent to confuse and deceive, as alleged above.  Therefore, WHAM-O is entitled to recover three times the amount of Defendant Manley's profits plus WHAM-O's reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) & (b).

**THIRD CLAIM FOR RELIEF**

(Trademark Dilution in Violation of Section 43(C) of the Lanham Act,

15 U.S.C. § 1125(C))

66.  Paragraphs 1 through 65 are hereby incorporated by reference.

67. If the Court does not adjudge Manley, Dubinsky, Chan, Liu, and Izzy Holdings to be liable to WHAM-O as judgment debtors for the $6 million award in the Color Case, WHAM-O alleges in the alternative that Manley diluted, and continues to dilute, WHAM-O's YELLOW WATER SLIDE MARK in violation of the Lanham Act.

68. Given more than four decades of use and the enormous popularity of WHAM-O's water slide toys, the YELLOW WATER SLIDE MARK is famous among children and adults alike. The color serves no function in a water slide toy. Indeed, a federal court has already deemed the YELLOW WATER SLIDE MARK to be valid and good in law, and a jury held the mark to be famous by its willful dilution determination.

69. Defendant Manley has made unauthorized use of the YELLOW WATER SLIDE MARK in its products, and continues to do so despite demands to cease.

70. Such unauthorized use of the mark has and will actually dilute the distinctiveness of the YELLOW WATER SLIDE MARK.

71. By reason of these acts, WHAM-O has suffered and is suffering actual, permanent and irreparable injury, the extent of which is presently not known, and WHAM-O will suffer continuing damage and irreparable injury unless Defendant Manley is preliminarily and permanently enjoined from the use of the marks.

72. WHAM-O is entitled to recover all profits heretofore realized by Defendant Manley during its dilution of the YELLOW WATER SLIDE MARK, as well as WHAM-O's costs in this action pursuant to 15 U.S.C. § 1117(a).

73. Defendant Manley's actions have been willful, malicious and fraudulent with knowledge of the likelihood of confusion and deception and with intent to confuse and deceive, as alleged above. Therefore, WHAM-O is entitled to recover three times the amount of Defendant Manley Toys's profits plus WHAM-O's reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) & 1117(b).

### FOURTH CLAIM FOR RELIEF

### (False Advertising in Violation of section 43(a)(1)(b) of the Lanham Act)

74. Paragraphs 1 through 73 are hereby incorporated by reference.

COMPLAINT

75. If the Court does not adjudge Manley, Dubinsky, Chan, Liu, and Izzy Holdings to be liable to WHAM-O as judgment debtors for the $6 million award in the Color Case, WHAM-O alleges in the alternative that Manley Toys intentionally engaged in, and continues to engage in, false advertising in violation of the Lanham Act.

76. Defendant Manley Toys's use of misleading packaging in connection with the sale, or offering for sale, of its water slide toys constitutes false advertising in violation of section 43(a)(1)(B) of the Lanham Act. The horizontal sliding surface of Defendant Manley Toys's water slide toys is orange, but the packaging depicts a yellow horizontal sliding surface. Defendant Manley Toys's false representation in connection with the sale, or offering for sale, of its water slide toys has caused, or is likely to cause, confusion with the YELLOW WATER SLIDE MARK and cause injury to Wham-O.

77. Defendant Manley Toys is presently engaged in the misleading marketing, advertising, and promotion of its water slide toys, and unless immediately restrained and enjoined, will continue to do so. WHAM-O's remedy at law is not adequate to compensate it for the harm inflicted and threatened by Defendant Manley Toys's false representations in connection with the sale, or offering for sale, of its goods and services.

78. WHAM-O has been damaged by Defendant Manley Toys's false advertising in an amount to be proved at trial. WHAM-O is entitled to recover lost profits due to diverted sales because of the false advertising, loss of good will, the cost of corrective advertising, and all profits heretofore realized by Defendant Manley Toys during its false advertising.

79. Defendant Manley Toys's actions have been willful, malicious and fraudulent with knowledge of the likelihood of confusion and deception and with intent to confuse and deceive, as alleged above. Therefore, WHAM-O is entitled to recover three times the amount of Defendant Manley Toys's profits plus WHAM-O's reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### (Unfair Competition in Violation of California Common Law)

80. Paragraphs 1 through 79 are hereby incorporated by reference.

81. If the Court does not adjudge Manley, Dubinsky, Chan, Liu, and Izzy Holdings to be liable to WHAM-O as judgment debtors for the $6 million award in the Color Case, WHAM-O alleges in the alternative that Manley Toys has engaged in, and continues to engage in, unfair competition in violation of California common law.

82. Defendant Manley Toys's conduct, as alleged above, constitutes unfair competition under California State common law. Defendant Manley Toys's acts have resulted in the "passing off" of its products as those of WHAM-O, or as somehow related or associated with, or sponsored or endorsed by, WHAM-O.

83. By reason of these acts, WHAM-O has suffered and is suffering actual, permanent and irreparable injury, the extent of which is presently not known, and WHAM-O will suffer continuing damage and irreparable injury unless Defendant Manley Toys is preliminarily and permanently enjoined from the use of the marks.

84. Defendant Manley Toys's actions have been willful, malicious and fraudulent with knowledge of the likelihood of confusion and deception and with intent to confuse and deceive, as alleged above. Therefore, WHAM-O is entitled to recover punitive damages under California Civil Code § 3294.

## SIXTH CLAIM FOR RELIEF

### (Contributory Infringement as to Defendants Dubinsky, Liu, and Chan)

85. Paragraphs 1 through 84 are hereby incorporated by reference.

86. If the Court does not adjudge Manley, Dubinsky, Chan, Liu, and Izzy Holdings to be liable to WHAM-O as judgment debtors for the $6 million award in the Color Case, WHAM-O alleges in the alternative that Defendants Dubinsky, Chan, and Liu are personally liable, jointly and severally, for Manley's and SLB's infringement of WHAM-O's YELLOW WATER SLIDE MARK, including the $6 million judgment awarded WHAM-O in the Color case.

87. As corporate officers and directors who authorized and directed the infringing activities of SLB and Manley, Defendants Dubinsky, Chan, and Liu are personally liable for SLB's and Manley's infringing conduct. *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996). Dubinsky authorized and directed the infringing activities of SLB as its president. Upon information and belief, Dubinsky directed the creation of the infringing packaging, which consisted of a photograph taken in his sister's backyard and featured his nephew. His personal involvement in the infringement of WHAM-O's YELLOW WATER SLIDE MARK continues to this day, as he continues to personally and falsely assure retailers that they need not comply with that permanent injunction entered in the Color case, intentionally inducing the retailers to infringe WHAM-O's YELLOW WATER SLIDE MARK. His conduct has encouraged retailers to continue distributing, selling, and offering for sale infringing slides designed by SLB and manufactured, distributed and sold by Manley.

88. As Chairman and CEO of Manley, and owner of almost 95% of Manley's stock, as well as CEO and corporate secretary of SLB at the time the Color case was filed, Chan has authorized and directed SLB's and Manley's infringing conduct. Upon information and belief, Chan was familiar with WHAM-O's intellectual property generally and the YELLOW WATER SLIDE MARK specifically at least as of 2005 when he personally met with WHAM-O's CEO to discuss Manley's possible acquisition of WHAM-O. Furthermore, despite the judgment and permanent injunction entered in the Color case, which WHAM-O personally served on Chan, he continues to authorize and direct his company's manufacture, distribution, advertisement, marketing, sale, and offering for sale of water slide toys that infringe WHAM-O's YELLOW WATER SLIDE MARK.

89. As a primary, if not sole, owner and sole director of SLB, and the managing director of Manley, Lisa Liu has authorized and directed SLB's and Manley's infringing conduct. Dubinsky reported to Liu, and Liu had responsibility at Manley for the infringing products and prepared the royalty statements for the infringing products due to Six Flags. Despite the judgment and permanent injunction entered in the Color case, which WHAM-O

1  personally served on Liu, she continues to authorize and direct Manley's manufacture,

2  distribution, advertisement, marketing, sale, and offer to sell water slide toys that infringe

3  WHAM-O's YELLOW WATER SLIDE MARK.

4      90.   By authorizing and directing Manley's and SLB's actions alleged above,

5  Defendants Dubinsky, Chan, and Liu have intentionally, knowingly and willfully infringed

6  the registered YELLOW WATER SLIDE MARK, and induced others to infringe the

7  YELLOW WATER SLIDE MARK and they continue to do so.

8      91.   Defendants Dubinsky, Chan, and Liu presently have authorized and are

9  directing Manley and, upon information and belief, Aquawood as successor to SLB, in the

10  marketing and sale of infringing goods, and unless immediately restrained and enjoined,

11  will continue to do so.  WHAM-O's remedy at law is not adequate to compensate it for the

12  harm inflicted and threatened by Defendants Dubinsky's, Chan's, and Liu's use of

13  confusingly similar marks in connection with its goods and services.

14      92.   WHAM-O has been damaged by Defendants Dubinsky's, Chan's, and Liu's

15  willful and deliberate infringement in an amount to be proved at trial.  WHAM-O is entitled

16  to recover the judgment from the Color case and all profits realized by Defendant Manley

17  Toys and Aquawood for their infringement of the YELLOW WATER SLIDE MARK, as

18  well as WHAM-O's costs in this action pursuant to 15 U.S.C. § 1117(a).

19      93.   Defendants Dubinsky's, Chan's, and Liu's actions have been willful, malicious

20  and fraudulent with knowledge of the likelihood of confusion and deception and with intent

21  to confuse and deceive, as alleged above.  Therefore, WHAM-O is entitled to recover the

22  judgment from the Color case plus three times the amount of Defendants Manley's and

23  Aquawood's profits realized from their infringement of the YELLOW WATER SLIDE

24  MARK plus WHAM-O's reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) & (b)

25  and the enhanced damages award from the Color case.

26                     **SEVENTH CLAIM FOR RELIEF**

27      (Contributory Trademark Dilution as to Defendants Dubinsky, Liu, and Chan)

28      94.   Paragraphs 1 through 93 are hereby incorporated by reference.

95.  If the Court does not adjudge Manley, Dubinsky, Chan, Liu, and Izzy Holdings to be liable to WHAM-O as judgment debtors for the $6 million award in the Color Case, WHAM-O alleges in the alternative that Defendants Dubinsky, Chan, and Liu are personally liable for Manley's and SLB's willful trademark dilution of WHAM-O's famous YELLOW WATER SLIDE MARK.

96.  As corporate officers and directors who authorized and directed the trademark diluting activities of SLB and Manley, Defendants Dubinsky, Chan, and Liu are personally liable for SLB's and Manley's infringing conduct. *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996).  Dubinsky authorized and directed the trademark diluting activities of SLB as its president.  Upon information and belief, Dubinsky directed the creation of the trademark diluting packaging, which consisted of a photograph taken in his sister's backyard and which featured his nephew.  His personal involvement in the dilution of WHAM-O's YELLOW WATER SLIDE MARK continues to this day, as he continues to personally assure retailers that they can ignore the judgment and permanent injunction entered in the Color case, which adjudged the YELLOW WATER SLIDE MARK to be famous.  His conduct has encouraged retailers to continue distributing, selling, and offering for sale slides designed by SLB and manufactured, distributed and sold by Manley that dilute WHAM-O's YELLOW WATER SLIDE MARK, intentionally inducing the retailers to dilute WHAM-O's YELLOW WATER SLIDE MARK..

97.  As Chairman and CEO of Manley, and owner of almost 95% of Manley's stock, as well as CEO and corporate secretary of SLB at the time the Color case was filed, Chan has authorized and directed SLB's and Manley's trademark diluting conduct, as alleged above.  Upon information and belief, Chan was familiar with WHAM-O's intellectual property generally and the YELLOW WATER SLIDE MARK at least as of 2005 when he personally met with WHAM-O's CEO to discuss Manley's possible acquisition of WHAM-O.  Furthermore, WHAM-O personally served Chan with the judgment and permanent injunction from the Color case, which found the YELLOW WATER SLIDE MARK to be famous, and yet he continues to authorize and direct his company's continued manufacture,

1  distribution, advertisement, marketing, selling, and offering for sale water slide toys that

2  dilute WHAM-O's YELLOW WATER SLIDE MARK.

3      98.  As a primary, if not sole owner, and sole director of SLB, and the managing

4  director of Manley, Lisa Liu has authorized and directed SLB's and Manley's trademark

5  diluting conduct, as alleged above.  Dubinsky reported to Liu, and Liu had responsibility at

6  Manley for the trademark diluting products and prepared the royalty statements for the

7  trademark diluting products due to Six Flags.  WHAM-O personally served Liu with the

8  judgment and permanent injunction from the Color case, and yet she continues to authorize

9  and direct Manley's manufacture, distribution, advertisement, marketing, sale, and offer to

10  sell water slide toys that infringe WHAM-O's YELLOW WATER SLIDE MARK.

11      99.  Given more than four decades of use and the enormous popularity of WHAM-

12  O's water slide toys, the YELLOW WATER SLIDE MARK is famous among children and

13  adults alike.  The color serves no function in a water slide toy.  Indeed, this Court already

14  adjudged the YELLOW WATER SLIDE MARK to be valid and good in law, and the jury

15  in the Color case held the mark to be famous.

16      100. Defendants Dubinsky, Chan, and Liu have directed and authorized SLB,

17  Manley, and upon information and belief, Aquawood as SLB's successor, to make

18  unauthorized use of the YELLOW WATER SLIDE MARK in their products, and continues

19  to do so despite the permanent injunction and judgment in the Color case.

20      101. Such unauthorized use of the mark has and will actually dilute the

21  distinctiveness of the YELLOW WATER SLIDE MARK.

22      102. By reason of these acts, WHAM-O has suffered and is suffering actual,

23  permanent and irreparable injury, the extent of which is presently not known, and WHAM-

24  O will suffer continuing damage and irreparable injury unless Defendants Dubinsky, Chan,

25  and Liu are preliminarily and permanently enjoined from the use of the YELLOW WATER

26  SLIDE MARK.

27      103. WHAM-O is entitled to recover, jointly and severally, from Defendants

28  Dubinsky, Chan, and Liu the $6 million judgment in the Color case and all profits

1    heretofore realized by Defendants Manley and Aquawood during their dilution of the

2    YELLOW WATER SLIDE MARK, as well as WHAM-O's costs in this action pursuant to

3    15 U.S.C. § 1117(a).

4         104. Defendants Dubinsky's, Chan's, and Liu's actions have been willful, malicious

5    and fraudulent with knowledge of the likelihood of confusion and deception and with intent

6    to confuse and deceive, as alleged above.  Therefore, WHAM-O is entitled to recover three

7    times the amount of Defendant Manley's and Aquawood's profits plus WHAM-O's

8    reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) & 1117(b) and the enhanced

9    damages award from the Color case.

10                        **EIGHTH CLAIM FOR RELIEF**

11        **(Contributory False Advertising as to Dubinsky, Chan and Liu)**

12        105. Paragraphs 1 through 104 are hereby incorporated by reference.

13        106. If the Court does not adjudge Manley, Dubinsky, Chan, Liu, and Izzy Holdings

14   to be liable to WHAM-O as judgment debtors for the $6 million award in the Color Case,

15   WHAM-O alleges in the alternative that Manley Toys intentionally engaged in, and

16   continues to engage in, false advertising in violation of the Lanham Act.

17        107. As corporate officers and directors who authorized and directed the false

18   advertising by SLB and Manley, Defendants Dubinsky, Chan, and Liu are personally liable

19   for SLB's and Manley's intentional false advertising. *Committee for Idaho's High Desert,*

20   *Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996).  Dubinsky authorized and directed the false

21   advertising by SLB as its president.  Upon information and belief, Dubinsky directed the

22   creation of the misleading packaging, which consisted of a photograph taken in his sister's

23   backyard and which featured his nephew.  His personal involvement in the false advertising

24   continues to this day, as he continues to personally assure retailers that they can ignore the

25   judgment and permanent injunction entered in the Color case.  His conduct has encouraged

26   retailers to continue distributing, selling, and offering for misleading and false packaging

27   for water slides designed by SLB and manufactured, distributed and sold by Manley,

28

1  intentionally inducing the retailers to engage in false advertising to the derogation of

2  WHAM-O's YELLOW WATER SLIDE MARK..

3      108. As Chairman and CEO of Manley, and owner of almost 95% of Manley's stock,

4  as well as CEO and corporate secretary of SLB at the time the Color case was filed, Chan

5  has authorized and directed SLB's and Manley's false advertising, as alleged above.  Upon

6  information and belief, Chan was familiar with WHAM-O's intellectual property generally

7  and the YELLOW WATER SLIDE MARK at least as of 2005 when he personally met with

8  WHAM-O's CEO to discuss Manley's possible acquisition of WHAM-O.  Furthermore,

9  WHAM-O personally served Chan with the judgment and permanent injunction from the

10  Color case, which found SLB's packaging misleading and false, and yet he continues to

11  authorize and direct his company's false and misleading advertising.

12      109. As a primary, if not sole, owner and the sole director of SLB, and the managing

13  director of Manley, Lisa Liu has authorized and directed SLB's and Manley's false

14  advertising, as alleged above.  Dubinsky reported to Liu, and Liu had responsibility at

15  Manley for the products that were falsely advertised and prepared the royalty statements for

16  those products due to Six Flags.  WHAM-O personally served Liu with the judgment and

17  permanent injunction from the Color case, and yet she continues to authorize and direct

18  Manley's false and misleading advertising.

19      110. Defendants Dubinsky's, Chan's, and Liu's direction and authorization of false

20  and misleading advertising by SLB, Manley Toys, and upon information and belief,

21  Aquawood as SLB's successor, in connection with the sale, or offering for sale, of its water

22  slide toys constitute false advertising in violation of section 43(a)(1)(B) of the Lanham Act.

23  The horizontal sliding surface of SLB's and Defendant Manley Toys's water slide toys is

24  orange, but the packaging depicts a yellow horizontal sliding surface.  This false

25  representation in connection with the sale, or offering for sale, of its water slide toys has

26  caused, or is likely to cause, confusion with the YELLOW WATER SLIDE MARK and

27  cause injury to Wham-O.

28

111. Defendants Dubinsky, Chan, and Liu continue to direct and authorize Manley Toys and, upon information and belief, Aquawood, to engage in the misleading marketing, advertising, and promotion of its water slide toys, and unless immediately restrained and enjoined, they will continue to do so.  WHAM-O's remedy at law is not adequate to compensate it for the harm inflicted and threatened by Defendants false representations in connection with the sale, or offering for sale, of its goods and services.

112. WHAM-O has been damaged by Defendants' false advertising in an amount to be proved at trial.  WHAM-O is entitled to recover the $6 million judgment from the Color case from Defendants Dubinsky, Chan, and Liu, jointly and severally, and any additional lost profits due to diverted sales because of the continued false advertising, loss of good will, the cost of corrective advertising, and all profits heretofore realized by Defendants Manley and Aquawood during their false advertising.

113. Defendants Dubinsky's, Chan's, and Liu's actions have been willful, malicious and fraudulent with knowledge of the likelihood of confusion and deception and with intent to confuse and deceive, as alleged above.  Therefore, WHAM-O is entitled to recover three times the amount of Defendant Manley's and Aquawood's profits plus WHAM-O's reasonable attorneys' fees, in addition to the enhanced damages award from the Color case.

## PRAYER FOR RELIEF

WHEREFORE, WHAM-O prays for entry of judgment in its favor and against Defendants as follows:

1.  That it be adjudged that Defendants Manley Toys, Dubinsky, Chan, Liu, and Izzy Holdings are the alter egos of SLB Toys and are liable to WHAM-O as judgment debtors in Case No. CV 06-1382 RSWL (CWx);

2.  That it be adjudged that Defendant Wal-Mart is indebted to Defendant Manley Toys in the amount of approximately $9 million; and

3.  That the debt and any other property belonging to Defendant Manley Toys that is in the possession or control of Defendant Wal-Mart be applied to payment of the money judgment against SLB Toys in favor of WHAM-O.

IN THE ALTERNATIVE, WHAM-O prays for entry of judgment in its favor and against Defendants as follows:

1.  For a judgment that Defendants Manley Toys, Dubinsky, Chan, and Liu have infringed United States Trademark Registration No. 1,432,069 in violation of 15 U.S.C. § 1114;

2.  For a judgment that Defendants Manley Toys, Dubinsky, Chan, and Liu have diluted United States Trademark Registration Nos. 1,432,069 in violation of 15 U.S.C. § 1125(C);

3.  For a judgment that Defendant Manley Toys has engaged in unfair competition in violation of California state common law;

4.  For judgment that Defendant Manley Toys, Dubinsky, Chan, and Liu willfully and deliberately advertised, distributed and sold goods infringing the registered YELLOW WATER SLIDE MARK, in violation of federal law;

5.  For an entry of preliminary and permanent injunctive relief restraining and enjoining Defendants Manley Toys, Dubinsky, Chan, and Liu and all of their agents, successors, and assigns, and all persons in active concert or participation with any of them, from using the color yellow in connection with the distribution, sale or offering for sale of water slide toys, or any other mark, alone or in combination with other words or symbols, that is confusingly similar to WHAM-O's YELLOW WATER SLIDE, or which is likely to cause confusion or mistake or to deceive, including any use on Defendant's website and on the Internet;

6.  For an order requiring Defendant Manley Toys to deliver to WHAM-O all articles that infringe or dilute the YELLOW WATER SLIDE MARK, pursuant to 15 U.S.C. § 1118;

7.  For an order requiring Defendant Manley Toys to advise WHAM-O of the identity of all customers, suppliers, distributors and manufacturers of Defendant's water slides using the color yellow;

8. For an order requiring Defendant Manley Toys to advise all customers, suppliers, distributors and manufacturers that: (a) its water slides using the color yellow were not manufactured, licensed, distributed or authorized by WHAM-O; (b) any sales of such waterslides infringes the YELLOW WATER SLIDE MARK; and (c) any such infringing water slides sold or distributed by Defendant Manley Toys may be returned to Defendant Manley Toys in any condition for a full refund, and Defendant Manley Toys shall make such refund and maintain all records relating to such recall notices and refunds;

9. For an award to WHAM-O of all profits received by Defendant Manley Toys and Aquawood of any kind made as a result of Defendant Manley Toys's, Dubinsky's, Chan's, and Liu's infringement, and all damages sustained by WHAM-O by reason of Defendant Manley Toys's, Dubinsky's, Chan's, and Liu's acts of infringement, pursuant to 15 U.S.C. § 1117;

10. For an award of three times the amount of Defendant Manley Toys's and Aquawood's profits and WHAM-O's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(b);

11. For a declaration that this is an exceptional case and an award of reasonable attorneys' fees against Defendants Manley Toys, Dubinsky, Chan, Liu and Aquawood pursuant to 15. U.S.C. § 1117(a).

12. For an award of compensatory damages against Defendants Manley Toys, Dubinsky, Chan, and Liu;

13. For an award of punitive damages against Defendants Manley Toys, Dubinsky, Chan, and Liu;

14. For an award of the costs of this action against Defendants Manley Toys, Dubinsky, Chan, and Liu; and

/ / /

15. For an award of such other and further relief as the Court shall deem just and proper.

DATED: February 25, 2008          Respectfully submitted,

                                  HELLER EHRMAN LLP


                                  By _____
                                         JOHN C. ULIN

                                  Attorneys for Plaintiff
                                  WHAM-O, INC.

# JURY TRIAL DEMAND

Plaintiff Wham-O, Inc. hereby demands a jury trial on all claims herein that are properly triable to a jury.

DATED: February 25, 2008

Respectfully submitted,

HELLER EHRMAN LLP

By _____

JOHN C. ULIN

Attorneys for Plaintiff
WHAM-O, INC.

# Exhibit 1

JOHN C. ULIN (SBN 165524)
ANNA R. ZUSMAN (SBN 232753)
HELLER EHRMAN LLP
333 So. Hope St., 39th Floor
Los Angeles, CA 90071
Tel: 213-689-0200; Fax: 213-614-1868

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| WHAM-O, INC., a Delaware corporation | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV08-01281 PSG (Ex)** |
| v. | |
| MANLEY TOYS, LTD., a Hong Kong corporation, (see attachment) | |
| | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _John C. Ulin, Esq._____, whose address is _333 So. Hope Street, 39th Floor, Los Angeles, CA 90071_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___FEB 2 5 2008_____

By: _____**NATALIE LONGORIA**_____

Deputy Clerk

(Seal of the Court)

1198

_[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)]._

1  ANNETTE L. HURST (Bar No. 148738)
   Annette.Hurst@hellerehrman.com
2  ELISABETH R. BROWN (Bar No. 234879)
3  Elisabeth.Brown@hellerehrman.com
   HELLER EHRMAN LLP
4  333 Bush Street
   San Francisco, CA 94104
5  Telephone: +1 (415) 772-6000
6  Facsimile: +1 (415) 772-6268

7  JOHN C. ULIN (Bar No. 165524)
   John.Ulin@hellerehrman.com
8  ANNA R. ZUSMAN (Bar No. 232753)
9  Anna.Zusman@hellerehrman.com
   333 South Hope Street, 39th Floor
10 Los Angeles, CA 90071
11 Telephone: +1 (213) 689-0200
   Facsimile: +1 (213) 614-1868
12 Attorneys for Plaintiff
13 WHAM-O, INC.

14                   UNITED STATES DISTRICT COURT

15                  CENTRAL DISTRICT OF CALIFORNIA

16 WHAM-O, INC., a Delaware corporation,        Case No.:

17                            Plaintiff,
                                                 **COMPLAINT FOR JUDGMENT**
18        v.                                     **DEBTOR'S INTEREST IN DEBT**
                                                 **TO SATISFY MONEY JUDGMENT,**
19                                               **TRADEMARK INFRINGEMENT,**
   MANLEY TOYS, LTD., a Hong Kong               **FALSE DESIGNATION OF**
20 corporation, IZZY HOLDINGS, LLC, a           **ORIGIN, TRADEMARK DILUTION**
   California limited liability company,         **AND UNFAIR COMPETITION**
21 AQUAWOOD, LLC, a California limited
   liability company, A.W. COMPUTER
22 HOLDINGS, LLC, a California limited liability **JURY TRIAL DEMANDED**
23 company, BRIAN DUBINSKY, SAMSON
   CHAN, LISA LIU, and WAL-MART STORES,
24 INC., a Delaware corporation,
25
26                           Defendants.
27
28
   ───────────────────────────────────────────
                        COMPLAINT

JS 44 (Rev. 12/07)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
WHAM-O, INC.

### DEFENDANTS
MANLEY TOYS, LTD., BRIAN DUBINSKY, SAMSON CHAN, LISA LIU, AW COMPUTER HOLDINGS LLC, AQUAWOOD, LLC, WAL-MART STORES, INC., TARGET CORPORATION, TOYS 'R' US, INC.

**(b)** County of Residence of First Listed Plaintiff **Alameda, CA**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Los Angeles, CA**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Annette L. Hurst
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104
+1 415.772.6000

John C. Ulin
Heller Ehrman LLP
333 South Hope Street
Los Angeles, CA 90071
+1 213.689.0200

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

☒ 3  Federal Question
      (U.S. Government Not a Party)

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus — | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original
      Proceeding

☐ 2  Removed from
      State Court

☐ 3  Remanded from
      Appellate Court

☐ 4  Reinstated or
      Reopened

☐ 5  Transferred from
      another district
      (specify)

☐ 6  Multidistrict
      Litigation

☐ 7  Appeal to District
      Judge from
      Magistrate
      Judgment

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Section 1114; 15 U.S.C. Section 1125

Brief description of cause:
Willful trademark infringement, false advertising, and trademark dilution; judgment debtors interest in debt

**CV08- 01281**

American LegalNet, Inc.
www.FormsWorkflow.com

| VII. REQUESTED IN<br>COMPLAINT: | □ CHECK IF THIS IS A **CLASS ACTION**<br>UNDER F.R.C.P. 23 | **DEMAND $** | CHECK YES only if demanded in complaint:<br>**JURY DEMAND:** ☒ Yes ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S)<br>IF ANY | (See instructions): | JUDGE Ronald S.W. Lew | DOCKET NUMBER Case Nos. CV 06-1382; CV<br>06-6508 |
|---|---|---|---|

DATE
February 25, 2007

SIGNATURE OF ATTORNEY OF RECORD

*J.C. U_____*

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

VIII(b).  **RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No   ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

Alameda, CA

List the California County, or State if other than California, in which **EACH** named defendant resides.  (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.

Los Angeles, CA

List the **California County**, or State if other than California, in which **EACH** claim arose.  (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.

Los Angeles, CA

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _____  Date _____

**Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV08- 1281 PSG (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

# United States Patent Office

**761,883**
**Registered Dec. 24, 1963**

## PRINCIPAL REGISTER
## Trademark

Ser. No. 118,388, filed Apr. 21, 1961

# SLIP 'N SLIDE

Wham-O Manufacturing Company (California corpora-
tion)
835 E. El Monte St.
San Gabriel, Calif.

For: FLEXIBLE PLASTIC WATER SLIDE, in
CLASS 22.
First use Apr. 13, 1961; in commerce Apr. 13, 1961.
No claim of exclusive right is made to the use of
"Slide."

# Exhibit 2



781600

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

### UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

September 21, 2005

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,432,069* IS CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM  *March 10, 1987*
*SECTION 8 & 15*
SAID RECORDS SHOW TITLE TO BE IN:
   *WHAM-O- INC.*
   *A DELAWARE CORPORATION*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

W. MONTGOMERY
Certifying Officer



**Int. Cl.: 28**

**Prior U.S. Cl.: 22**

# United States Patent and Trademark Office

Reg. No. 1,432,069
Registered Mar. 10, 1987

## TRADEMARK
### PRINCIPAL REGISTER



KRANSCO MANUFACTURING, INC. (CALI-
FORNIA CORPORATION)
160 PACIFIC AVENUE
SAN FRANCISCO, CA 941884866

FOR: WATER SLIDE TOYS, IN CLASS 28
(U.S. CL. 22).

FIRST USE 0-0-1960; IN COMMERCE
0-0-1960.

THE MARK IS LINED FOR THE COLOR
YELLOW.
THE MARK CONSISTS OF THE SINGLE
COLOR YELLOW APPLIED TO THE ENTIRE
SURFACE OF THE GOODS.
SEC. 2(F).

SER. NO. 574,701, FILED 12-23-1985.

JAMES WALSH, EXAMINING ATTORNEY

# Exhibit 3

Priority
Send ✓
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK U S DISTRICT COURT

OCT 1 1 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

1
2
3
4
5
6
7
8
9
10
11
12

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

13

SLB TOYS USA, INC., a New York corporation

No: 2:06-CV-01382 RSWL (CWx)

14

Plaintiff / Counter-Defendant,

15

**VERDICT FORM WITH SPECIAL INTERROGATORIES**

v.

16

WHAM-O, INC., a Delaware corporation

17
18

Defendant / Counter-Claimant.

19

The Honorable Ronald S.W. Lew

20
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28

DOCKETED ON CM

OCT 1 1 2007

455

BY                          022

WE, THE JURY, FIND:

## CLAIM 1--INFRINGEMENT OF YELLOW WATER SLIDE TRADEMARK

On the claim of Wham-O against SLB for infringement of the trademark (registered as U.S. Trademark Reg. No. 1,432,069 or unregistered) for the color YELLOW on the sliding surface of water slide toys, we, the jury, find in favor of (check one):

Wham-O: X

SLB:   _____

If you found for Wham-O on claim 1, do you find that SLB infringed the trademark willfully?

Yes: X

No: _____

## CLAIM 2--INFRINGEMENT OF YELLOW/BLUE WATER SLIDE TRADEMARK

On the claim of Wham-O against SLB for infringement of the trademark registered in the United States (U.S. Trademark Reg. No. 2,924,744), we, the jury, find in favor of (check one):

Wham-O: _____

SLB: X

1

If you found in favor of Wham-O on claim 2, do you find that SLB infringed the trademark willfully?

Yes:___

No: ___

## CLAIM 3--FALSE ADVERTISING

On the claim of Wham-O against SLB for unfair competition through false advertising, we, the jury, find in favor of (check one):

Wham-O: X

SLB: ___

If you found in favor of Wham-O on claim 3, do you find that SLB intended to deceive or otherwise acted in bad faith?

Yes: X

No: ___

## CLAIM 4--DILUTION

On the claim of Wham-O against SLB for dilution of the trademark (registered or unregistered) for the color YELLOW on the sliding surface of water slide toys, we, the jury, find in favor of (check one):

Wham-O: X

SLB: ___

2

If you found in favor of Wham-O on claim 4, do you find that SLB diluted the YELLOW trademark willfully?

Yes: X

No: ___

## DAMAGES--ALL CLAIMS

Note:  Complete the following paragraph only if you find in favor of the Wham-O on at least one of the claims.

We, the jury, assess damages for the Wham-O in the sum of $ 3.60 M .

$ 3,600,000

3

## ADVISORY VERDICT

The Court requests advice from the jury with regard to the following matters.

### SLB'S CLAIM FOR CANCELLATION

Do you find that SLB has established by clear and convincing evidence that Wham-O abandoned its YELLOW WATER SLIDE trademark registration (U.S. Trademark Reg. No. 1,432,069)?

Yes: ___

No: X

### WHAM-O'S REQUEST FOR ENHANCED DAMAGES

Note: Complete the following paragraphs only if you find in favor of Wham-O and find willfulness or bad faith on at least one of the claims.

Do you find that enhanced damages should be awarded against SLB in order to fully compensate Wham-O and/or to make SLB's infringement unprofitable?

Yes: X

No: ___

4

If your answer was Yes, please recommend an amount of enhanced damages to the Court in a sum no more than three times the damages you have already assessed. The enhanced amount may not be so great as to constitute a penalty.

We, the jury, recommend enhanced damages for Wham-O in the sum of $ _2.4 M_ .

$ 2,400,000

PLEASE SIGN AND DATE THIS FORM AND RETURN IT TO THE COURT

Dated: _11 Oct 07_

Signed: _Name Redacted by Court for service_
_____(by Jury Foreperson)_     _on parties_

5

# Exhibit 4



FILED
CLERK, U.S. DISTRICT COURT

DEC - 5 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-5
JS-2/JS-3
Scan Only

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| SLB TOYS USA, INC., | ) | CV 06-1382 RSWL (CWx) |
| Plaintiff, | ) | |
| | ) | **JUDGMENT** |
| v. | ) | |
| WHAM-O INC., et al. | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED

1.  SLB'S CLAIMS FOR DECLARATORY RELIEF

Plaintiff SLB Toys USA, Inc.'s claims for declaratory
relief are hereby dismissed with prejudice; Defendant Wham-
O's United States Trademark Registration No. 1,432,069 is
good and valid in law.

1

2.   WHAM-O'S COUNTERCLAIMS

Counter-claimant Wham-O is hereby awarded final judgment on its counterclaims against SLB in the sum of $6,000,000 (six million dollars), plus its costs of suit as the prevailing party in this action.

3.   PERMANENT INJUNCTION

IT IS ORDERED THAT SLB and each of its officers, agents, servants and employees, and all those persons in active concert or participation with them are hereby forever enjoined from using the color yellow on the sliding surface of water slide toys, or packaging or advertising depicting the same, or any mark similar thereto or likely to cause confusion therewith, in the sale, offering for sale, distribution or advertising of water slide toys at any locality in the United States.

RONALD S.W. LEW

_____

**RONALD S.W. LEW**
Senior U.S. District Judge

DATED: December 4, 2007

2

```
                              FILED
                  CLERK, U.S. DISTRICT COURT

                       DEC - 5 2007

                  CENTRAL DISTRICT OF CALIFORNIA
                  BY                      DEPUTY
```

Priority ———
Send ———
Enter ———
Closed ———
JS-5/JS-6 ———
JS-2/JS-3 ———
Scan Only ———

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SLB TOYS USA, INC.,<br><br>          Plaintiff,<br><br>     v.<br><br>WHAM-O INC., et al.<br><br><br><br>          Defendant. | CV 06-1382 RSWL (CWx)<br><br>**ORDER GRANTING<br>PERMANENT INJUNCTION** |

Currently before this Court is Wham-O, Inc.'s Motion for Permanent Injunction.  Having considered all papers and arguments, **THE COURT NOW FINDS AND RULES AS FOLLOWS:**

Wham-O, Inc. has shown that it will suffer irreparable injury, there is inadequate remedy at law, the balance of hardship tilts in its favor, and the public interest would

1

1  not be disserved by a permanent injunction.

2      Accordingly, the Court **GRANTS** the Motion for Permanent

3  Injunction as detailed below.

4      IT IS ORDERED THAT SLB and each of its officers,

5  agents, servants and employees, and all those persons in

6  active concert or participation with them are hereby forever

7  enjoined from using the color yellow on the sliding surface

8  of water slide toys, or packaging or advertising depicting

9  the same, or any mark similar thereto or likely to cause

10 confusion therewith, in the sale, offering for sale,

11 distribution or advertising of water slide toys at any

12 locality in the United States.  See Plough, Inc. v. Kreis

13 Laboratories, 314 F.2d 635, 639 (9th Cir. 1963) ("[The

14 infringer] must 'be required to keep a safe distance away

15 from the margin line.'").

16     However, the Court denies Wham-O's request to order

17 destruction of articles because such an order is

18 unnecessarily harsh and burdensome for the Court to oversee,

19 especially in light of the fact that the jury did not find

20 any specific product design to be infringing.  Further, the

21 Court denies SLB's request for a sell-off period as

22 inappropriate in this case.

23 ///

24 ///

25 ///

26 ///

2

1    Moreover, the Court denies Wham-O's request to order
2 compliance reporting as inappropriate and unnecessary in
3 this case.

4

5 **IT IS SO ORDERED.**

6                                            RONALD S.W. LEW

7                                      **RONALD S.W. LEW**
                                 Senior U.S. District Judge

8 DATED: December 3, 2007

# Exhibit 5

**FILED**
ALAMEDA COUNTY

JUL 1 9 2007

CLERK OF THE SUPERIOR COURT

By _Vicki Daysell_ J9



SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| WHAM-O, INC., | No. RG07-329828 |
| Plaintiff, | ORDER GRANTING PRELIMINARY INJUNCTION |
| vs. | |
| EILEEN SEFCHICK; BRIAN DUBINSKY; SLB TOYS USA, INC.; MANLEY TOYQUEST, LLC, and DOES 1 through 100, inclusive, | |
| Defendants. | |

The Motion of Plaintiff Wham-O, Inc. ("Plaintiff") for Preliminary Injunction

came on regularly for hearing on June 29, 2007, in Department 31 of this Court, Judge

Frank Roesch presiding.  Plaintiff appeared by Annette L. Hurst, Stephen C. Tedesco and

Rod M. Fliegel.  Defendant SLB Toys USA, Inc. ("SLB"), on its own behalf and on

behalf of the entity sued (perhaps erroneously) as Manley Toyquest, LLC ("Manley"),

appeared by Joshua R. Furman. Defendant Eileen Sefchick ("Sefchick") appeared by

Jeffrey Abrams.  Defendant Brian Dubinsky ("Dubinsky") appeared by Alex Weingarten.

1

The Court has considered all of the papers filed on behalf of the parties, and the arguments of counsel at the hearing, and good cause appearing, HEREBY GRANTS the motion for preliminary injunction.

In deciding whether to issue a preliminary injunction, a court must weigh two interrelated factors: (1) the likelihood that the moving party will ultimately prevail on the merits; and (2) the relative interim harm to the parties from issuance or non-issuance of the injunction. The Court's determination is guided by a mix of the potential merit and interim harm factors. (*Butt v. State of California* (1992) 4 Cal.4th 668, 677-78.) The scope of available preliminary relief is necessarily limited by the scope of the relief likely to be obtained at trial on the merits. (*Id.*) A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim. (*Id.*)

Based on a consideration of the above factors and all the material before it on the present Order to Show Cause, the Court finds that Plaintiff has made a sufficient showing for extending the injunctive relief set forth in the Temporary Restraining Order issued by the Court on June 8, 2007, as modified by the Court in this Order, through the time of trial in this action.

Accordingly, IT IS HEREBY ORDERED that Defendants SLB, Manley, Sefchick and Dubinsky, and all persons acting in concert or participating with them, are

(1) ordered to return immediately to Plaintiff all materials, writings (as defined in California Evidence Code section 250), documents, computer files and/or databases

2

(whether stored on CD-Rom or in other computer-based or digital form) containing information of Plaintiff covered by the Proprietary Information and Inventions Agreement signed by Sefchick on or about October 14, 2004, or protected as "trade secret" information under California law, including any and all originals, copies, transcriptions, extracts, and any materials of any form that consist of, contain, incorporate, or otherwise refer to or disclose such information;

(2) enjoined and/or restrained during the pendency of this action from engaging in, committing, or performing, directly or indirectly, any and all of the following acts:

(a) misappropriating, disclosing to any third parties or making use of any "Proprietary Information" of Plaintiff, defined as information that is either covered by the Proprietary Information and Inventions Agreement signed by Sefchick on or about October 14, 2004, or protected as "trade secret" information under California law, except for information acquired through publicly available sources wholly independent of Sefchick;

(b) engaging in solicitation activities, sales calls or other contacts using Proprietary Information for the purpose of marketing, soliciting or selling competing products;

(c) retaining possession of any Proprietary Information;

(d) interfering with the advantageous business relationships between Plaintiff and its customers in any manner through use of Proprietary Information; or

(e) concealing, transferring, deleting, altering, editing or modifying any computer files, databases, documents or other information obtained from Plaintiff, or destroying any information relevant to this lawsuit.

IT IS FURTHER ORDERED that Plaintiff shall furnish a bond in connection with this preliminary injunction pursuant to Code of Civil Procedure § 529 in the sum of $10,000.00 on or before five (5) days after the date of the Clerk's certificate of mailing of this Order (plus five additional days for service by mail pursuant to Code of Civil Procedure § 1013).

Dated  7/19/07

_____
Frank Roesch
Judge of the Superior Court

4

## CLERK'S DECLARATION OF MAILING

I certify that I am not a party to this cause and that on the date stated below I caused a true copy of the foregoing ORDER GRANTING PRELIMINARY INJUNCTION to be mailed first class, postage pre paid, in a sealed envelope to the persons hereto, addressed as follows:

Stephen C. Tedesco, Esq.
Rod M. Fliegel, Esq.
LITTLER MENDELSON, APC
650 California Street, 20th Floor
San Francisco, CA 94108-2693


Annette L. Hurst, Esq.
HELLER EHRMAN
333 Bush Street
San Francisco, CA 94104


Joshua R. Furman, Esq.
2228 Barry Avenue
Los Angeles, CA 90064


Jeffrey I. Abrams, Esq.
WOLF, RIFKIN, SHAPIRO & SCHULMAN, LLP
11400 West Olympic Blvd., Ninth Floor
Los Angeles, CA 90064-1557


Alex M. Weingarten, Esq.
LAGER WEINGARTEN, LLP
1800 Century Park East, Suite 600
Los Angeles, CA 90067


I declare under penalty of perjury that the same is true and correct.
Executed on July 20, 2007.

By: *Vicki Daybell*

Vicki Daybell, Deputy Clerk
Department 31

# Exhibit 6

## GENERAL ASSIGNMENT

THIS ASSIGNMENT made this 19th day of November, 2007, by SLB Toys USA, INC., a New York corporation, having its principal place of business at 2229 Barry Avenue, Los Angeles, California (hereinafter referred to as "Assignor"), to BYRON Z. MOLDO (hereinafter referred to as "Assignee").

WITNESSETH:   That whereas Assignor is indebted to various persons and is desirous of providing for the payment of same, so far as is in its power, by an assignment of all of its property for that purpose:

NOW, THEREFORE, Assignor, for valuable consideration, receipt of which is hereby acknowledged, does hereby make the following General Assignment for the benefit of Assignor's creditors to Byron Z. Moldo, as Assignee, under the following terms and conditions:

1.      Assignor does hereby grant, bargain, sell, assign, convey, and transfer to Assignee, his successors and assigns, in trust for the ultimate benefit of Assignor's creditors generally, all of the property and assets of the Assignor of every kind and nature and wheresoever situated (collectively, the "Assets"), whether in possession, reversion, remainder, or expectancy, both real and personal, and any interest or equity therein; included therein are all merchandise, furniture, fixtures, machinery, equipment, raw materials, merchandise or work in process, book accounts, books, accounts receivable, cash on hand, all causes of action (personal or otherwise), insurance policies, patents, trademarks, trade names, copyrights, trade secrets, intellectual property, any and all right, title, license, and/or interest of Assignor in advertising, including White and Yellow Page telephone listings, any and all right, title, license or other interest in Assignor's telephone, fax, or other numbers listed in any advertisement by which business is solicited, any and all rights and goodwill in the name "SLB Toys USA, INC.", Assignor's complete computer system, and all other property of every kind and nature owned by Assignor, and without limiting the generality of the foregoing, including all of the assets pertaining to that certain business known as SLB Toys USA, INC., located at 2229 Barry Avenue, Los Angeles, California 90064. Assignor shall use reasonable efforts to have the insurance policies endorsed over to the Assignee.

2      This Assignment constitutes a grant deed of all real property owned by the Assignor, if any, whether or not said real property is specifically described herein.

3      Leases and leasehold interests in real estate are included in this assignment.

4.      Assignor agrees to deliver to Assignee all books of account and records, to execute and deliver all additional necessary documents immediately upon request by Assignee, and to endorse all indicia of ownership where required by Assignee, in order to complete the transfer of all assets to Assignee as intended by this Assignment, including, but not limited to, all of Assignor's real and personal property and/or Assignor's interest therein, including mortgages, deeds of trust, motor vehicles, patent rights, trademarks,

AW450

trade names, copyrights, trade secrets and intellectual property. Assignee is hereby authorized to execute all endorsements and demands requiring Assignor's signature, in the name of Assignor. Assignor further authorizes Assignee to apply for any deposits, refunds (including specifically among all others, claims for refund of taxes paid) or claims wherever necessary in the name of Assignor. Assignee is authorized to direct all Assignor's United States mail to be delivered to Assignee, and Assignee is expressly authorized and directed to open said mail as agent of Assignor, and to do any thing or act which the Assignee in his sole and arbitrary discretion deems necessary or advisable to effectuate the purpose of this Assignment.

      5.    Assignor and Assignee agree to the following:

      a.    This instrument transfers legal title and possession to Assignee of all of the above-described assets and Assignee, in his own discretion, may direct whether to continue all, or part, of the business operations, or to liquidate said assets.

      b.    Assignee, at his discretion, may sell and dispose of said assets upon such terms and conditions as he may see fit, at public or private sale. Assignee shall not be personally liable in any manner, and Assignee's obligations shall be in a representative capacity only in his capacity as Assignee for the benefit of creditors. Assignee shall administer this estate to the best of his ability, but it is expressly understood that he, his agents and/or employees shall be liable only for the reasonable care and diligence in said administration, and he shall not be liable for any act or thing, or any omission to act, done by him, his agents or employees in good faith in connection therewith.

      c.    From the proceeds of the sale, collections, operations or other source, Assignee shall pay himself and retain as Assignee all of his charges and expenses, together with his own remuneration and fee, which remuneration and fee shall not exceed the sum of fifteen thousand dollars ($15,000.00), plus ten percent (10%) of the amount of the proceeds received and handled by the Assignee from sales, collections, operations or other sources. Assignee may also pay from such proceeds reasonable remuneration to his agents, attorneys and accountants, and may pay a reasonable fee to Assignor's attorney. All of the aforementioned amounts are to be determined at Assignee's sole direction, determination and judgment.

      d.    Assignee may compromise claims, assume or reject Assignor's executory contracts, and discharge at his option any liens on said assets and indebtedness which under law are entitled to priority of payment. Assignee shall have the power to borrow money, hypothecate and pledge the assets, and to do all matters and things that said Assignor could have done prior to this Assignment. Any act or thing done by the Assignee hereunder shall bind the assignment estate and the Assignee only in his capacity as Assignee for the benefit of creditors. Assignee shall have the right to sue and defend suits as the successor of the Assignor, and the Assignee is hereby given the right and power to institute and prosecute legal proceedings in the name of the Assignor, the same as if the Assignor itself had instituted and prosecuted such proceedings or actions.

AW451

e.      Assignor agrees (to the extent assignable by law) to make any and all claims for refund of taxes which may be due from the Internal Revenue Service or other taxing agencies for tax refunds, or otherwise, and to forthwith upon receipt of such refunds pay them over to the Assignee, and hereby empowers Assignee to make all claims for refunds which may be made by Assignor.

f.      After paying all costs and expenses of administration and all fees and all allowed priority claims, Assignee shall distribute to all unsecured creditors, *pro rata*, any remaining net proceeds of this assignment estate.  Said payments are to be made until all assets are exhausted, or these creditors are paid or settled, in full.  Thereafter, the surplus of moneys and property, if any, shall be transferred or conveyed to the Assignor.  If any undistributed dividends to creditors or any reserve funds shall remain unclaimed for a period of ninety (90) days after issuance of a final dividend check by the Assignee, then the same shall become the property of this Assignee and used to supplement his fees for services rendered in administering this Assignment.

g.      It is agreed and understood that this transaction is a common law assignment for the benefit of Assignor's creditors, and is not a statutory assignment.  This Agreement shall be governed by the provisions of section 493.010, *et seq.*, of the California Code of Civil Procedure.

SLB Toys USA, INC.,
a New York corporation, Assignor

By:_____
    Brian Dubinsky, President


ACCEPTED THIS 19th DAY OF NOVEMBER, 2007:


_____
BYRON Z. MOLDO, ASSIGNEE

60445.1   834.00022                    3

AW452

e.      Assignor agrees (to the extent assignable by law) to make any and all claims for refund of taxes which may be due from the Internal Revenue Service or other taxing agencies for tax refunds, or otherwise, and to forthwith upon receipt of such refunds pay them over to the Assignee, and hereby empowers Assignee to make all claims for refunds which may be made by Assignor.

f.      After paying all costs and expenses of administration and all fees and all allowed priority claims, Assignee shall distribute to all unsecured creditors, *pro rata*, any remaining net proceeds of this assignment estate. Said payments are to be made until all assets are exhausted, or these creditors are paid or settled, in full. Thereafter, the surplus of moneys and property, if any, shall be transferred or conveyed to the Assignor. If any undistributed dividends to creditors or any reserve funds shall remain unclaimed for a period of ninety (90) days after issuance of a final dividend check by the Assignee, then the same shall become the property of this Assignee and used to supplement his fees for services rendered in administering this Assignment.

g.      It is agreed and understood that this transaction is a common law assignment for the benefit of Assignor's creditors, and is not a statutory assignment. This Agreement shall be governed by the provisions of section 493.010, *et seq.*, of the California Code of Civil Procedure.

SLB Toys USA, INC.,
a New York corporation, Assignor

By:_____
    Brian Dubinsky, President

ACCEPTED THIS ____ DAY OF NOVEMBER, 2007:

_____
BYRON Z. MOLDO, ASSIGNEE

60445.1   834.00022                        3

AW453

11/19/2007 MON 22:00   FAX 719 577 5861   BROADMOOR HOTEL                    ☒006/014

     e.     Assignor agrees (to the extent assignable by law) to make any and all claims for refund of taxes which may be due from the Internal Revenue Service or other taxing agencies for tax refunds, or otherwise, and to forthwith upon receipt of such refunds pay them over to the Assignee, and hereby empowers Assignee to make all claims for refunds which may be made by Assignor.

     f.     After paying all costs and expenses of administration and all fees and all allowed priority claims, Assignee shall distribute to all unsecured creditors, *pro rata*, any remaining net proceeds of this assignment estate. Said payments are to be made until all assets are exhausted, or these creditors are paid or settled, in full. Thereafter, the surplus of moneys and property, if any, shall be transferred or conveyed to the Assignor. If any undistributed dividends to creditors or any reserve funds shall remain unclaimed for a period of ninety (90) days after issuance of a final dividend check by the Assignee, then the same shall become the property of this Assignee and used to supplement his fees for services rendered in administering this Assignment.

     g.     It is agreed and understood that this transaction is a common law assignment for the benefit of Assignor's creditors, and is not a statutory assignment. This Agreement shall be governed by the provisions of section 493.010, *et seq.*, of the California Code of Civil Procedure.

     SLB Toys USA, INC.,
     a New York corporation, Assignor

     By: _____
         Brian Dubinsky, President

ACCEPTED THIS 19th DAY OF NOVEMBER, 2007:

_____

BYRON Z. MOLDO, ASSIGNEE

AW454

# CONSENT TO ASSIGNMENT BY STOCKHOLDERS AND BOARD OF DIRECTORS

We, the undersigned, being owners and holders of 100% of the shares of stock, being more than 50% of the subscribed and issued stock, and the Board of Directors of SLB Toys USA Inc a New York corporation, do hereby give our consent to the within assignment and transfer of the property of said corporation.

NAME                                    SHARES HELD

Lisa Liu                                 100%

                                         SLB Toys USA INC

                                  By: _____
                                         Lisa Liu, Director

AW455

## CONSENT OF DIRECTORS TO HOLD MEETING
*Los Angeles, California*

*November 12th, 2007*

I, Lisa Liu, being the sole director of SLB Toys USA, Inc. a corporation, organized under the laws of the State of New York, assembled this day at the office of the Corporation via telephone conference, at Los Angeles California, do hereby consent that a meeting of said directors be held at this time and place for the transaction of such business as may come before the meeting, and waive any notice of said meeting.

_____ Director
Lisa Liu

AW456

# MINUTES OF THE MEETING

*Los Angeles, California, November 1st, 2007*

At a meeting of the directors of SLB Toys USA Inc., a New York Corporation, held at the office of the

Corporation via telephone conference at its place of business, 2228 Barry Avenue, Los Angeles California

90064, at 6 (six) o'clock  a.m. the following directors were present:

Lisa Liu

_____ .

_____ .

*Absent:*

_____ .

_____ .

_____ .

The President announced that the purpose of the meeting was to consider the financial condition of the company and the advisability of making a general assignment for the benefit of creditors.

On motion by Lisa Liu. seconded by Lisa Liu
the following resolution was adopted, to-wit:

BE IT RESOLVED:

That Brian Dubinsky,  President of this Corporation be, and is, hereby authorized and directed by the directors of this Corporation, in meeting assembled, to make an assignment of all assets of the Corporation to Byron Z. Moldo, for the pro rata benefit of all creditors of this corporation, and that Brian Dubinsky be, and he is hereby authorized and directed to execute said assignment containing such provisions as may be agreed upon between him and Byron Z. Moldo, (Assignee), and he is also authorized and directed to execute and deliver to Byron Z. Moldo, as Assignee, such other deeds, assignments, and agreements as may be necessary to carry this resolution into effect.

BE IT FURTHER RESOLVED:

That said Assignee for the benefit of creditors be, and is hereby, authorized to execute and file and prosecute on behalf of this corporation all claims for refund or abatement of all excess taxes heretofore or hereafter assessed against or collected from this corporation and any one officer of this corporation be, and it is, hereby authorized and directed to make, execute and deliver in favor of such person as may be designated by the assignee for the benefit of creditors, a power of attorney on the regular printed form thereof used by the United States Treasury Department so as to authorize said attorney-in-fact to process any tax claims for it on behalf of this Corporation.

There being no further business to come before the directors, the meeting is adjourned subject to the call of the President or Vice-President.

I, Lisa Liu, Director of SLB Toys USA  Inc., a New York Corporation, do hereby certify that the foregoing is a true and correct copy of the minutes of the meeting of directors held in ___Los Angeles, California_____, at the place and hour stated and that the resolution

60445.1   834.00022                          6

AW457

contained in said minutes was adopted by the directors at said meeting and the same has not been modified or rescinded.

Dated November 1, 2007

_____

Lisa Liu, Director

CORPORATE
SEAL

AW458

in __Los Angeles, California, at the place and hour stated and that the resolution contained in said minutes was adopted by the directors at said meeting and the same has not been modified or rescinded.

Dated November 1, 2007

_____
Lisa Liu, Director

CORPORATE
SEAL

**EXHIBIT B**

32032-0490/LEGAL13037165.1

# ToyQuest
# 2228 Barry Ave.
# Los Angeles, CA

## Assets Inventory

### _Electronics and Computers_

| NO | Description | Qty. |
|----|-------------|------|
| 1A | Laptop computer, Dell, with docking station | 3 |
| 2A | Dell Desktop Optiplex, Dimension, Precision | 16 |
| 3S | Flat monitors graphics, 15,17,19,22,24,32 inch | 23 |
| 4S | Apple G5 Desktop (upgraded) graphic | 8 |
| 5A | Apple IMAC Desktop (upgraded) graphic | 2 |
| 6A | Apple Server network with (7) raids and accessory | 1 |
| 7A | Apple networking equipment | 2 |
| 8A | Dell server power edge 2900 | 1 |
| 9A | Routers, HOB (24P) patch panel, sonic wall | 6 |
| 10A | Belkin Power Conditioners | 2 |
| 11A | ONKYO sound system, DVD, cdrw, speakers | 1 |
| 12A | Scanners, Epson, Fujitso | 8 |
| | Dell server power edge 1400 | 1 |
| | Copier | 1 |
| | Printers, photo, inkjet | 8 |
| 126 | Printers, laser, (Canon, Epson) | 10 |
| 127 | Canon Fax | 1 |
| | HP Plotter Electro Static 500PS | 1 |
| | Nikon Camera | 1 |
| | External Hard Drive Maxtor | 3 |
| | Polycom Speaker phone | 2 |
| 128 | Sony 50" TV | 1 |
| 129 | Panasonic Flat TV | 1 |
| 9 | Panasonic Phone System high and digital | 1 |
| 130 | Panasonic Phones | 25 |
| | Assorted software for production, animations | |
| | Post production software (not disclosed) | |

# ToyQuest
## 2228 Barry Ave.
## Los Angeles, CA

**Assets Inventory**

_Office Furniture_

| NO | Description | Qty. |
|----|-------------|------|
| 1 | Work station modular furniture shape desk with credenza and book shelf wood and glass | 12 |
| 2 | Office desks and return.  Book shelves, file cabinet | 8 |
| 3 | Ping Pong Table | 1 |
| 4 | Basket Ball Hoop | 1 |
| 5 | Office High back chairs | 28 |
| 6 | Couches (canvas) and love seat | 3 |
| 7 | Coffee table | 2 |
| 8 | Conference Table and 10 chairs and side table | 1 |
| 9 | Bean bag chairs | 11 |
| 10 | Kitchen equipment; refrigerator, coffeemaker, microwave, table and chairs | |
| 11 | Couches corner unit and coffee table | |
| 12 | Assorted electronic tools | |
| 13 | Assorted toys and display | |

AW462

Bills to Purchase

Phones:        Account #011790110281693004 (Verizon)
               Cellular – Account #493020121 (T-Moble) and #828388772 (AT&T)
               Account #995718753 (AT&T)

COVAD dsl – Account #590373

UPS – Account #E13A05

Pacific Alarm System account– Customer #16793

Blue Cross account– Group #285554

Kansas Communications phone acct– Account #001 0803 506807604

Excel phone– Account #12000006608

DWP – Account #4480769402229000000101 & 4480769402229000000901

Time Warner cable– Account #8448200190791573

Sirius music – Account #1200567211

Tivo – Account #0011032676

Gas Company – Account #03738969041

American Express – Primary Account #378207594142007

Bentonville phone  – Account #60103-147286

discover.com account

Case No. CV 06-1382 RSWL (CWx)  - SLB  v. Wham-O, Inc. – **only the appellate rights**

So. Cal. Disposal trash – Account #2206

AW463

# Exhibit 7

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this *"Agreement"*), dated as of November 19, 2007 (the *"Effective Date"*), is made by and between BYRON Z. MOLDO (*"Seller"*), in his capacity as assignee for the benefit of creditors of SLB Toys, USA, Inc., and AW COMPUTER HOLDINGS LLC, a California limited liability company (*"Buyer"*).

## RECITALS

A.      By resolution of the board of directors (the *"Board"*) of SLB Toys USA, Inc. (*"Assignor"*), as memorialized in duly executed minutes, and with consent by written action of the majority of Assignor's shareholders entitled to vote, Assignor transferred ownership of all of its right, title and interest in and to its tangible and intangible assets (the *"Assets"*) to Seller, and in so doing also designated Seller to act, pursuant to California law, as the assignee for the benefit of creditors of Assignor. A true and correct copy of the General Assignment Agreement, dated as of November 19, 2007, between Assignor and Seller, as assignee, memorializing such assignment is attached hereto as Exhibit A (the *"General Assignment"*). Prior to the General Assignment, Assignor was engaged in the business of designing toy and related products (the *"Business"*).

B.      Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, certain of the Assets, on the terms and conditions set forth in this Agreement. After the occurrence of the Closing contemplated under this Agreement, Seller will undertake the winding down of Assignor, which shall include, but not be limited to, the distribution of net funds, after payment of fees and costs associated with the liquidation and winding down, to Assignor's creditors.

## AGREEMENT

NOW, THEREFORE, in consideration of the above recitals and the mutual covenants hereinafter set forth, Buyer and Seller hereby agree as follows:

## 1.      PURCHASE AND SALE OF CERTAIN ASSETS.

1.1      **Agreement to Sell and Purchase Assets.** Subject to the terms and conditions of this Agreement, and in reliance on the representations, warranties and covenants set forth in this Agreement, Seller agrees to and will sell, assign, transfer and convey to Buyer at the Closing (as defined in Section 2.2 below), and Buyer agrees to and will purchase and acquire from Seller at the Closing, all of Seller's right, title and interest in and to all of the Assets described in Section 1.2 below. .

1.2      **Acquired Assets Defined.** Seller shall, at the Closing, sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from the Seller, at the Closing, as-is, where-is, all right, title and interest in and to the following Assets (collectively, the *"Acquired Assets"*):

-1-

AW439

(i)     all tangible personal property, including, without limitation, all equipment and furniture set forth on Exhibit B annexed hereto;

(ii)    the rights of Assignor and Seller in and to the pending appeal in that certain litigation entitled SLB v. Wham-O, Case No. CV 06-1382 RSWL (CWx); and

(iii)   those written contracts, agreements, invoices, of indebtedness, or other contractual arrangements which are set forth on Exhibit B annexed hereto (the "*Assumed Contracts*").

Except for the Acquired Assets described above in Section 1.2(i), (ii) and (iii) which are being transferred to Buyer hereunder, Seller shall retain all of its right, title and interest in, to and under all remaining Assets (collectively, the "*Excluded Assets*"), which shall include:

(i)     all cash as of the Closing;

(ii)    all written and oral contracts, agreements, leases, subleases, licenses, purchase orders, invoices, instruments of indebtedness, or other contractual arrangements that are not Assumed Contracts ("*Excluded Contracts*"); and

(iii)   all rights of the Seller under this Agreement.

**1.3**    **Asset Transfer; Passage of Title; Delivery.**

(a)    Title Passage.  At the Closing, title to all of the Acquired Assets shall pass to Buyer, and Seller shall execute assignments, conveyances, bills of sale, or such other instruments of conveyance as Buyer may reasonably request to effect or evidence the transfers contemplated hereby.

**2.**    **PURCHASE PRICE; PAYMENTS.**

**2.1**    **Purchase Price.**  At the Closing and effective as of the Closing, and in consideration of the sale, transfer, conveyance and assignment of all the Acquired Assets to Buyer, Buyer shall (i) pay by cashier's check the sum of Fifty Five Thousand Dollars ($55,000); and (ii) assume the liabilities, debts and obligations associated with the Assumed Contracts ("*Purchase Price*").

**2.2**    **Closing.**  The consummation of the purchase and sale of the Acquired Assets contemplated hereby (the "*Closing*") shall take place by not later than November 19, 2007, *provided that* the parties may mutually agree to extend the date of the Closing.  Upon termination, neither party will have any further rights or obligations hereunder, except that Sections 3 and 11 shall survive such termination.

AW440

**3.    OBLIGATIONS NOT ASSUMED.**

    **3.1    Liabilities and Obligations Not Assumed.**  Other than those liabilities, debts or obligations of Seller or Assignor associated with the Assumed Contracts which serves and constitutes a material component of the Purchase Price given for the Acquired Assets, Buyer shall not assume or become obligated in any way to pay any liabilities, debts or obligations of Seller or of Assignor whatsoever, including, but not limited to, any liabilities or obligations now or hereafter arising from Assignor's business activities that took place prior to the Closing or any liabilities arising out of or connected to the liquidation and winding down of Assignor's business.

    **3.2    No Obligations to Third Parties.**  The execution and delivery of this Agreement shall not be deemed to confer any rights upon any person or entity other than the parties hereto, or make any person or entity a third party beneficiary of this Agreement, or to obligate either party to any person or entity other than the parties to this Agreement.  There shall be no successor liability of any kind arising from the transaction contemplated herein.

**4.    REPRESENTATIONS AND WARRANTIES OF BUYER.**

    Buyer hereby represents and warrants to Seller as follows:

    **4.1    Due Organization.**  Buyer is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of California.  Buyer has all necessary power and authority to enter into this Agreement and all other documents that Buyer is required to execute and deliver hereunder, and holds or will timely hold all permits, licenses, orders and approvals of all federal, state and local governmental or regulatory bodies necessary and required therefore.

    **4.2    Power and Authority; No Default.**  Buyer has all requisite power and authority to enter into and deliver this Agreement and to perform its obligations hereunder.  The signing, delivery and performance by Buyer of this Agreement, and the consummation of all the transactions contemplated hereby, have been duly and validly authorized by Buyer.   This Agreement, when signed and delivered by Buyer, will be duly and validly executed and delivered and will be the valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, subject to the laws relating to bankruptcy, insolvency and relief of debtors, and rules and laws governing specific performance, injunctions, relief and other equitable remedies.

    **4.3    Authorization for this Agreement.**  No authorization, approval, consent of, or filing with any governmental body, department, bureau, agency, public board, authority or other third party is required for the consummation by Buyer of the transactions contemplated by this Agreement.

    **4.4    Litigation.**  As of Closing, there is no litigation, suit, action, arbitration, inquiry, investigation or proceeding pending or, to the knowledge of Buyer, threatened, before any court,

-1-

agency or other governmental body against Buyer (or any corporation or entity affiliated with Buyer) which seeks to enjoin or prohibit or otherwise prevent the transactions contemplated hereby.

## 5.     REPRESENTATIONS AND WARRANTIES OF SELLER.

Seller represents and warrants to Buyer as follows:

**5.1     Power and Authority; No Default Upon Transfer.**  As assignee for the benefit of creditors of Assignor, Seller has all requisite power and authority to enter into and deliver this Agreement and to perform its obligations hereunder and under the General Assignment.  The signing, delivery and performance by Seller of this Agreement, and the consummation of all the transactions contemplated hereby, have been duly and validly authorized by Seller.  To the best of Seller's knowledge, the General Assignment was duly authorized by Assignor's Board, with the consent of the majority of Assignor's shareholders entitled to vote with respect thereto, and is a valid agreement binding on Assignor and Seller.  This Agreement, when signed and delivered by Seller, will be duly and validly executed and delivered and will be the valid and binding obligation of Seller, enforceable against Seller, as Assignee, in accordance with its terms as governed by applicable law, regulations and rules. .

**5.2     Title.**  The sale of the Acquired Assets is on an as-is, where-is basis, with no representations or warranties on the part of Seller.

**5.3     Assignee.**  All rights of Seller with regard to the ownership and possession of the Assets are rights held as Assignee pursuant to the General Assignment made by Assignor. Pursuant to the General Assignment, Assignor has transferred all of Assignor's right, title and interest in and to the Assets to Seller. .

## 6.     COVENANTS OF SELLER.

Seller covenants and agrees with Buyer as follows:

**6.1     Taxes and any Other Charges Related to the Sale.**  Seller agrees to pay all sales, transfer, use or other taxes, duties, claims or charges, if any, imposed on and/or related to the sale of the Acquired Assets to Buyer under this Agreement by any tax authority or other governmental agency.

**6.2     Further Assurances.**  From and after the Closing, Seller shall cooperate with Buyer and promptly sign and deliver to Buyer any and such additional documents, instruments, endorsements and related information and take actions as Buyer may reasonably request for the purpose of effecting the transfer of Seller's and/or Assignor's title to the Acquired Assets to Buyer, and/or carrying out the provisions of this Agreement.  Buyer shall compensate Seller for any reasonable, documented disbursements in connection with this Section 6.2 and time incurred in connection with providing assistance under this Section 6.2 in connection with any enforcement or other infringement action regarding the Acquired Assets; *provided that* Seller

- 4 -

shall have furnished Buyer an advance, written estimate of the fees and costs for such assistance and Buyer shall have agreed in writing to pay such fees and costs.

**6.3** **Survival of Covenants.** Each of the covenants set forth in this Section 6 and in Section 11 shall survive the Closing.

## 7. CONDITIONS TO CLOSING.

**7.1** **Conditions to Buyer's Obligations.** The obligations of Buyer hereunder shall be subject to the satisfaction and fulfillment of each of the following conditions, except as Buyer may expressly waive any of the same in writing:

(a) Accuracy of Representations and Warranties on Closing. The representations and warranties made herein by Seller shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing with the same force and effect as though such representations and warranties were made on and as of the Closing.

(b) Compliance. As of the Closing, Seller shall have complied in all material respects with, and shall have fully performed, in all material respects, all conditions, covenants and obligations of this Agreement imposed on Seller and required to be performed or complied with by Seller at, or prior to, the Closing.

(c) Delivery of Closing Documents. Seller shall have delivered, and Buyer shall have received, all of the documents deemed by the Buyer to be necessary to consummate the transaction contemplated hereby, which shall include, without limitation, a bill of sale.

**7.2** **Conditions to Seller's Obligations.** The obligations of Seller hereunder shall be subject to the satisfaction and fulfillment of each of the following conditions, except as Seller may expressly waive the same in writing:

(a) Accuracy of Representations and Warranties on Closing. The representations and warranties made herein by Buyer shall be true and correct in all material respects, and not misleading in any material respect, on and as of the date given, and on and as of the Closing with the same force and effect as though such representations and warranties were made on and as of the Closing.

(b) Compliance. Buyer shall have complied in all material respects with, and shall have fully performed, the terms, conditions, covenants and obligations of this Agreement imposed thereon to be performed or complied with by Buyer at, or prior to, the Closing.

(c) Payment. Buyer shall have transmitted by wire transfer and Seller shall have received payment of the Purchase Price.

- 5 -

**8.    CLOSING OBLIGATIONS.**

**8.1    Buyer's Closing Obligations.**  At the Closing, Buyer shall deliver to Seller payment of Fifty Five Thousand Dollars ($55,000) by cashier's check or as otherwise instructed by Seller, and a signature to this Agreement.

**8.2    Seller's Closing Obligations.**  At the Closing, Seller shall deliver to Buyer a signature to this Agreement, and executed bill of sale, assignment agreements and other agreements and documents which Buyer deems necessary to consummate the transaction contemplated hereunder.

**9.    SURVIVAL OF WARRANTIES.**

All representations and warranties made by Seller or Buyer herein, or in any certificate, schedule or exhibit delivered pursuant hereto, shall survive for a period of one (1) year after the Closing.

**10.    TERMINATION.**

**10.1    Termination.**  This Agreement may be terminated and the transactions contemplated herein may be abandoned, by written notice given to the other party hereto, at any time prior to the Closing:

(a)    by mutual written consent of Seller and Buyer;

(b)    by Buyer if Seller alters, amends or breaches any of the covenants, is in breach of any material covenant, representation, or warranty, or if it appears that a condition is impossible (other than through the failure of Buyer to comply with its obligations under this Agreement) to satisfy and Buyer has not waived such condition in writing on or before the Closing Date;

(c)    by Seller if Buyer alters, amends or breaches any of the covenants, is in breach of any material covenant, representation or warranty or if it appears that a condition is impossible (other than through the failure of Seller to comply with their obligations under this Agreement) to satisfy and Seller has not waived such condition in writing on or before the Closing Date:

(d)    if the Closing shall not have occurred on or before November 19, 2007, unless the Closing is extended by mutual agreement of the parties.

**11.    MISCELLANEOUS.**

**11.1    Expenses.**  Each of the parties hereto shall bear its own expenses (including without limitation attorneys' fees) in connection with the negotiation and consummation of the transaction contemplated hereby.

-6-

AW444

**11.2**     **Notices.**  Any notice required or permitted to be given under this Agreement shall be in writing and shall be personally or sent by certified or registered United States mail, postage prepaid, or sent by nationally recognized overnight express courier and addressed as follows:

        (a)     If to Seller:

            Byron Z. Moldo
            Moldo Davidson Fraioli Seror Sestanovich LLP
            2029 Century Park East, 21st Floor
            Los Angeles, CA 90067
            Tel.: 310-551-3100
            Fax: 310-551-0238
            Email: bmoldo@mdfslaw.com

        (b)     If to Buyer:

            A W Computer Holdings LLC
            2229 Barry Ave.
             Los Angeles, CA 90064
            Tel: 310-594-7292
            Fax: 310-594-7292
            Attention: Sui Sui Mak

            With a copy to:

            Ron Bender, Esq.
            Levene, Neale, Bender, Rankin & Brill L.L.P.
            10250 Constellation Blvd., Suite 1700
            Los Angeles, CA 90067
            Tel: 310-229-1234
            Fax: 310-229-1244
            Email: rb@lnbrb.com

**11.3**     **Entire Agreement.**  This Asset Purchase Agreement, the Exhibits hereto (which are incorporated herein by reference) and any agreements to be executed and delivered in connection herewith, together constitute the entire agreement and understanding between the parties and there are no agreements or commitments with respect to the transactions contemplated herein except as set forth in this Agreement.  This Agreement supersedes any prior offer, agreement or understanding between the parties with respect to the transactions contemplated hereby.

**11.4**     **Amendment; Waiver.**  Any term or provision of this Agreement may be amended only by a writing signed by Seller and Buyer.  The observance of any term or provision of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively) only by a writing signed by the party to be bound by such waiver.

AW445

No waiver by a party of any breach of this Agreement will be deemed to constitute a waiver of any other breach or any succeeding breach.

**11.5     No Third Party Beneficiaries.**  Nothing expressed or implied in this Agreement is intended, or shall be construed, to confer upon or to give any person, firm or corporation, other than the parties hereto, any rights or remedies under or by reason of this Agreement.

**11.6     Execution in Counterparts.**  For the convenience of the parties, this Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

**11.7     Benefit and Burden.**  This Agreement shall be binding upon, shall inure to the benefit of, and be enforceable by and against, the parties hereto and their respective successors and permitted assigns.

**11.8     Governing Law.**  This Agreement shall be governed by and construed in accordance with the internal laws of the State of California (excluding application of any choice of law doctrines that would make applicable the law of any other state or jurisdiction) and, where appropriate, applicable federal law.

**11.9     Severability.**  If any provision of this Agreement is for any reason and to any extent deemed to be invalid or unenforceable, then such provision shall not be voided but rather shall be enforced to the maximum extent then permissible under then applicable law and so as to reasonably effect the intent of the parties hereto, and the remainder of this Agreement will remain in full force and effect.

**11.10     Attorneys' Fees.**  Should a suit or arbitration be brought to enforce or interpret any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees to be fixed in amount by the Court or the Arbitrator(s) (including without limitation costs, expenses and fees on any appeal).  The prevailing party will be entitled to recover its costs of suit or arbitration, as applicable, regardless of whether such suit or arbitration proceeds to a final judgment or award.

IN WITNESS WHEREOF, Buyer and Seller executed and delivered this Asset Purchase Agreement by their duly authorized representatives as of the date referenced above.

**SELLER:**                                        **BUYER:**
BYRON Z. MOLDO, in his capacity           AW COMPUTER HOLDINGS LLC
as Assignee for the benefit of creditors
of SLB Toys USA, Inc.


By:_____          By:_____
      Byron Z. Moldo                              Sui Sui Mak, President of
                                                          AW Computer Holdings, LLC

- 8 -

AW446

No waiver by a party of any breach of this Agreement will be deemed to constitute a waiver of any other breach or any succeeding breach.

**11.5**    **No Third Party Beneficiaries.**  Nothing expressed or implied in this Agreement is intended, or shall be construed, to confer upon or to give any person, firm or corporation, other than the parties hereto, any rights or remedies under or by reason of this Agreement.

**11.6**    **Execution in Counterparts.**  For the convenience of the parties, this Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

**11.7**    **Benefit and Burden.**  This Agreement shall be binding upon, shall inure to the benefit of, and be enforceable by and against, the parties hereto and their respective successors and permitted assigns.

**11.8**    **Governing Law.**   This Agreement shall be governed by and construed in accordance with the internal laws of the State of California (excluding application of any choice of law doctrines that would make applicable the law of any other state or jurisdiction) and, where appropriate, applicable federal law.

**11.9**    **Severability.**  If any provision of this Agreement is for any reason and to any extent deemed to be invalid or unenforceable, then such provision shall not be voided but rather shall be enforced to the maximum extent then permissible under then applicable law and so as to reasonably effect the intent of the parties hereto, and the remainder of this Agreement will remain in full force and effect.

**11.10**    **Attorneys' Fees.**  Should a suit or arbitration be brought to enforce or interpret any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees to be fixed in amount by the Court or the Arbitrator(s) (including without limitation costs, expenses and fees on any appeal).  The prevailing party will be entitled to recover its costs of suit or arbitration, as applicable, regardless of whether such suit or arbitration proceeds to a final judgment or award.

IN WITNESS WHEREOF, Buyer and Seller executed and delivered this Asset Purchase Agreement by their duly authorized representatives as of the date referenced above.

SELLER:                                                BUYER:
BYRON Z. MOLDO, in his capacity        AW COMPUTER HOLDINGS LLC
as Assignee for the benefit of creditors
of SLB Toys USA, Inc.

By_____        By:_____
    Byron Z. Moldo                                          Sui Sui Mak, President of
                                                                       AW Computer Holdings, LLC

AW447

11/19/2007 MON 22:02  FAX 719 577 5861  BROADMOOR HOTEL                                    014/014

No waiver by a party of any breach of this Agreement will be deemed to constitute a waiver of any other breach or any succeeding breach.

**11.5     No Third Party Beneficiaries.** Nothing expressed or implied in this Agreement is intended, or shall be construed, to confer upon or to give any person, firm or corporation, other than the parties hereto, any rights or remedies under or by reason of this Agreement.

**11.6     Execution in Counterparts.** For the convenience of the parties, this Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

**11.7     Benefit and Burden.** This Agreement shall be binding upon, shall inure to the benefit of, and be enforceable by and against, the parties hereto and their respective successors and permitted assigns.

**11.8     Governing Law.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of California (excluding application of any choice of law doctrines that would make applicable the law of any other state or jurisdiction) and, where appropriate, applicable federal law.

**11.9     Severability.** If any provision of this Agreement is for any reason and to any extent deemed to be invalid or unenforceable, then such provision shall not be voided but rather shall be enforced to the maximum extent then permissible under then applicable law and so as to reasonably effect the intent of the parties hereto, and the remainder of this Agreement will remain in full force and effect.

**11.10    Attorneys' Fees.** Should a suit or arbitration be brought to enforce or interpret any provision of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees to be fixed in amount by the Court or the Arbitrator(s) (including without limitation costs, expenses and fees on any appeal). The prevailing party will be entitled to recover its costs of suit or arbitration, as applicable, regardless of whether such suit or arbitration proceeds to a final judgment or award.

IN WITNESS WHEREOF, Buyer and Seller executed and delivered this Asset Purchase Agreement by their duly authorized representatives as of the date referenced above.

**SELLER:**                                    **BUYER:**
BYRON Z. MOLDO, in his capacity                AW COMPUTER HOLDINGS LLC
as Assignee for the benefit of creditors
of SLB Toys USA, Inc.


By:_____               By:_____
      Byron Z. Moldo                             Sui Sui Mak, President of
                                                 AW Computer Holdings, LLC

-1-

AW448

<u>**EXHIBIT A**</u>

<u>**General Assignment**</u>

**[To be attached.]**

AW449

## GENERAL ASSIGNMENT

THIS ASSIGNMENT made this 19th day of November, 2007, by SLB Toys USA, INC., a New York corporation, having its principal place of business at 2229 Barry Avenue, Los Angeles, California (hereinafter referred to as "Assignor"), to BYRON Z. MOLDO (hereinafter referred to as "Assignee").

WITNESSETH:   That whereas Assignor is indebted to various persons and is desirous of providing for the payment of same, so far as is in its power, by an assignment of all of its property for that purpose:

NOW, THEREFORE, Assignor, for valuable consideration, receipt of which is hereby acknowledged, does hereby make the following General Assignment for the benefit of Assignor's creditors to Byron Z. Moldo, as Assignee, under the following terms and conditions:

1.     Assignor does hereby grant, bargain, sell, assign, convey, and transfer to Assignee, his successors and assigns, in trust for the ultimate benefit of Assignor's creditors generally, all of the property and assets of the Assignor of every kind and nature and wheresoever situated (collectively, the "Assets"), whether in possession, reversion, remainder, or expectancy, both real and personal, and any interest or equity therein; included therein are all merchandise, furniture, fixtures, machinery, equipment, raw materials, merchandise or work in process, book accounts, books, accounts receivable, cash on hand, all causes of action (personal or otherwise), insurance policies, patents, trademarks, trade names, copyrights, trade secrets, intellectual property, any and all right, title, license, and/or interest of Assignor in advertising, including White and Yellow Page telephone listings, any and all right, title, license or other interest in Assignor's telephone, fax, or other numbers listed in any advertisement by which business is solicited, any and all rights and goodwill in the name "SLB Toys USA, INC.", Assignor's complete computer system, and all other property of every kind and nature owned by Assignor, and without limiting the generality of the foregoing, including all of the assets pertaining to that certain business known as SLB Toys USA, INC., located at 2229 Barry Avenue, Los Angeles, California 90064.  Assignor shall use reasonable efforts to have the insurance policies endorsed over to the Assignee.

2.     This Assignment constitutes a grant deed of all real property owned by the Assignor, if any, whether or not said real property is specifically described herein.

3.     Leases and leasehold interests in real estate are included in this assignment.

4.     Assignor agrees to deliver to Assignee all books of account and records, to execute and deliver all additional necessary documents immediately upon request by Assignee, and to endorse all indicia of ownership where required by Assignee, in order to complete the transfer of all assets to Assignee as intended by this Assignment, including, but not limited to, all of Assignor's real and personal property and/or Assignor's interest therein, including mortgages, deeds of trust, motor vehicles, patent rights, trademarks,

AW450

trade names, copyrights, trade secrets and intellectual property. Assignee is hereby authorized to execute all endorsements and demands requiring Assignor's signature, in the name of Assignor. Assignor further authorizes Assignee to apply for any deposits, refunds (including specifically among all others, claims for refund of taxes paid) or claims wherever necessary in the name of Assignor. Assignee is authorized to direct all Assignor's United States mail to be delivered to Assignee, and Assignee is expressly authorized and directed to open said mail as agent of Assignor, and to do any thing or act which the Assignee in his sole and arbitrary discretion deems necessary or advisable to effectuate the purpose of this Assignment.

     5.    Assignor and Assignee agree to the following:

     a.    This instrument transfers legal title and possession to Assignee of all of the above-described assets and Assignee, in his own discretion, may direct whether to continue all, or part, of the business operations, or to liquidate said assets.

     b.    Assignee, at his discretion, may sell and dispose of said assets upon such terms and conditions as he may see fit, at public or private sale. Assignee shall not be personally liable in any manner, and Assignee's obligations shall be in a representative capacity only in his capacity as Assignee for the benefit of creditors. Assignee shall administer this estate to the best of his ability, but it is expressly understood that he, his agents and/or employees shall be liable only for the reasonable care and diligence in said administration, and he shall not be liable for any act or thing, or any omission to act, done by him, his agents or employees in good faith in connection therewith.

     c.    From the proceeds of the sale, collections, operations or other source, Assignee shall pay himself and retain as Assignee all of his charges and expenses, together with his own remuneration and fee, which remuneration and fee shall not exceed the sum of fifteen thousand dollars ($15,000.00), plus ten percent (10%) of the amount of the proceeds received and handled by the Assignee from sales, collections, operations or other sources. Assignee may also pay from such proceeds reasonable remuneration to his agents, attorneys and accountants, and may pay a reasonable fee to Assignor's attorney. All of the aforementioned amounts are to be determined at Assignee's sole direction, determination and judgment.

     d.    Assignee may compromise claims, assume or reject Assignor's executory contracts, and discharge at his option any liens on said assets and indebtedness which under law are entitled to priority of payment. Assignee shall have the power to borrow money, hypothecate and pledge the assets, and to do all matters and things that said Assignor could have done prior to this Assignment. Any act or thing done by the Assignee hereunder shall bind the assignment estate and the Assignee only in his capacity as Assignee for the benefit of creditors. Assignee shall have the right to sue and defend suits as the successor of the Assignor, and the Assignee is hereby given the right and power to institute and prosecute legal proceedings in the name of the Assignor, the same as if the Assignor itself had instituted and prosecuted such proceedings or actions.

AW451

e.      Assignor agrees (to the extent assignable by law) to make any and all claims for refund of taxes which may be due from the Internal Revenue Service or other taxing agencies for tax refunds, or otherwise, and to forthwith upon receipt of such refunds pay them over to the Assignee, and hereby empowers Assignee to make all claims for refunds which may be made by Assignor.

f.      After paying all costs and expenses of administration and all fees and all allowed priority claims, Assignee shall distribute to all unsecured creditors, *pro rata*, any remaining net proceeds of this assignment estate.  Said payments are to be made until all assets are exhausted, or these creditors are paid or settled, in full.  Thereafter, the surplus of moneys and property, if any, shall be transferred or conveyed to the Assignor.  If any undistributed dividends to creditors or any reserve funds shall remain unclaimed for a period of ninety (90) days after issuance of a final dividend check by the Assignee, then the same shall become the property of this Assignee and used to supplement his fees for services rendered in administering this Assignment.

g.      It is agreed and understood that this transaction is a common law assignment for the benefit of Assignor's creditors, and is not a statutory assignment.  This Agreement shall be governed by the provisions of section 493.010, *et seq.*, of the California Code of Civil Procedure.

SLB Toys USA, INC.,
a New York corporation, Assignor

By:_____
     Brian Dubinsky, President


ACCEPTED THIS 19th DAY OF NOVEMBER, 2007:


_____
BYRON Z. MOLDO, ASSIGNEE

AW452

e.       Assignor agrees (to the extent assignable by law) to make any and all claims for refund of taxes which may be due from the Internal Revenue Service or other taxing agencies for tax refunds, or otherwise, and to forthwith upon receipt of such refunds pay them over to the Assignee, and hereby empowers Assignee to make all claims for refunds which may be made by Assignor.

f.       After paying all costs and expenses of administration and all fees and all allowed priority claims, Assignee shall distribute to all unsecured creditors, *pro rata*, any remaining net proceeds of this assignment estate.  Said payments are to be made until all assets are exhausted, or these creditors are paid or settled, in full.  Thereafter, the surplus of moneys and property, if any, shall be transferred or conveyed to the Assignor.  If any undistributed dividends to creditors or any reserve funds shall remain unclaimed for a period of ninety (90) days after issuance of a final dividend check by the Assignee, then the same shall become the property of this Assignee and used to supplement his fees for services rendered in administering this Assignment.

g.       It is agreed and understood that this transaction is a common law assignment for the benefit of Assignor's creditors, and is not a statutory assignment.  This Agreement shall be governed by the provisions of section 493.010, *et seq.*, of the California Code of Civil Procedure.

SLB Toys USA, INC.,
a New York corporation, Assignor


By:_____
       Brian Dubinsky, President


ACCEPTED THIS ____ DAY OF NOVEMBER, 2007:

_____
BYRON Z. MOLDO, ASSIGNEE

AW453

11/_2/_007 MON 22:00  FAX 719 577 5861  BROADMOOR HOTEL                                    Ø006/014

e.      Assignor agrees (to the extent assignable by law) to make any and all claims for refund of taxes which may be due from the Internal Revenue Service or other taxing agencies for tax refunds, or otherwise, and to forthwith upon receipt of such refunds pay them over to the Assignee, and hereby empowers Assignee to make all claims for refunds which may be made by Assignor.

f.      After paying all costs and expenses of administration and all fees and all allowed priority claims, Assignee shall distribute to all unsecured creditors, *pro rata*, any remaining net proceeds of this assignment estate.  Said payments are to be made until all assets are exhausted, or these creditors are paid or settled, in full.  Thereafter, the surplus of moneys and property, if any, shall be transferred or conveyed to the Assignor.  If any undistributed dividends to creditors or any reserve funds shall remain unclaimed for a period of ninety (90) days after issuance of a final dividend check by the Assignee, then the same shall become the property of this Assignee and used to supplement his fees for services rendered in administering this Assignment.

g.      It is agreed and understood that this transaction is a common law assignment for the benefit of Assignor's creditors, and is not a statutory assignment.  This Agreement shall be governed by the provisions of section 493.010, *et seq.*, of the California Code of Civil Procedure.


                                   SLB Toys USA, INC.,
                                   a New York corporation, Assignor


                                   By: _____
                                         Brian Dubinsky, President


ACCEPTED THIS 19th DAY OF NOVEMBER, 2007:


_____

BYRON Z. MOLDO, ASSIGNEE


60445.1  834.00022                       3

AW454

# CONSENT TO ASSIGNMENT BY STOCKHOLDERS AND BOARD OF DIRECTORS

We, the undersigned, being owners and holders of 100% of the shares of stock, being more than 50% of the subscribed and issued stock, and the Board of Directors of SLB Toys USA Inc a New York corporation, do hereby give our consent to the within assignment and transfer of the property of said corporation.

NAME                                          SHARES HELD

Lisa Liu                                       100%

                                               SLB Toys USA INC.

                                        By: _____
                                               Lisa Liu, Director

AW455

## CONSENT OF DIRECTORS TO HOLD MEETING

*Los Angeles, California*

*November 12th, 2007*

I, Lisa Liu, being the sole director of SLB Toys USA, Inc. a corporation, organized under the laws of the

State of New York, assembled this day at the office of the Corporation via telephone conference, at Los Angeles

California, do hereby consent that a meeting of said directors be held at this time and place for the transaction of

such business as may come before the meeting, and waive any notice of said meeting.

_____ Director
Lisa Liu

AW456

# MINUTES OF THE MEETING

*Los Angeles, California, November 1st, 2007*

At a meeting of the directors of SLB Toys USA Inc., a New York Corporation, held at the office of the

Corporation via telephone conference at its place of business, 2228 Barry Avenue, Los Angeles California

90064, at 6 (six) o'clock p.m. the following directors were present:

Lisa Liu

_____.

_____.

*Absent:*

_____.

_____.

_____.

The President announced that the purpose of the meeting was to consider the financial condition of the company and the advisability of making a general assignment for the benefit of creditors.

On motion by *Lisa Liu*, seconded by *Lisa Liu* the following resolution was adopted, to-wit:

*BE IT RESOLVED:*

That *Brian Dubinsky*, President of this Corporation be, and is, hereby authorized and directed by the directors of this Corporation, in meeting assembled, to make an assignment of all assets of the Corporation to Byron Z. Moldo, for the pro rata benefit of all creditors of this corporation, and that Brian Dubinsky be, and he is hereby authorized and directed to execute said assignment containing such provisions as may be agreed upon between him and Byron Z. Moldo, (Assignee), and he is also authorized and directed to execute and deliver to Byron Z. Moldo, as Assignee, such other deeds, assignments, and agreements as may be necessary to carry this resolution into effect.

*BE IT FURTHER RESOLVED:*

That said Assignee for the benefit of creditors be, and is hereby, authorized to execute and file and prosecute on behalf of this corporation all claims for refund or abatement of all excess taxes heretofore or hereafter assessed against or collected from this corporation and any one officer of this corporation be, and it is, hereby authorized and directed to make, execute and deliver in favor of such person as may be designated by the assignee for the benefit of creditors, a power of attorney on the regular printed form thereof used by the United States Treasury Department so as to authorize said attorney-in-fact to process any tax claims for it on behalf of this Corporation.

There being no further business to come before the directors, the meeting is adjourned subject to the call of the President and Vice-President.

I, *Lisa Liu*, Director of SLB Toys USA Inc., a New York Corporation, do hereby certify that the foregoing is a true and correct copy of the minutes of the meeting of directors held in __Los Angeles, California_____, at the place and hour stated and that the resolution

AW457

*contained in said minutes was adopted by the directors at said meeting and the same has not been modified or rescinded.*

*Dated November 1, 2007*

_____

*Lisa Liu. Director*

*CORPORATE
SEAL*

AW458

in __Los Angeles, California, at the place and hour stated and that the resolution contained in said minutes was adopted by the directors at said meeting and the same has not been modified or rescinded.

Dated November 1, 2005

Lisa Liu, Director

CORPORATE
SEAL

AW459

**EXHIBIT B**

32052-0400/LEGAL13057165.1

# ToyQuest
## 2228 Barry Ave.
## Los Angeles, CA

### Assets Inventory

#### _Electronics and Computers_

| NO | Description | Qty. |
|----|-------------|------|
| 1A | Laptop computer (Dell) with docking station | |
| 2A | Dell Desktop Optiplex, Dimension, Precision | 16 |
| 3S | Flat monitors graphics, 15,17,19,22,24,32 inch | 23 |
| 4S | Apple G5 Desktop (upgraded) graphic | 8 |
| 5A | Apple IMAC Desktop (upgraded) graphic | 2 |
| 6A | Apple Server network with (7) raids and accessory | 1 |
| 7A | Apple networking equipment | 2 |
| 8A | Dell server power edge 2900 | 1 |
| 9A | Routers, HUB (24P) patch panel, sonic wall | 6 |
| 10A | Belkin Power Conditioners | 2 |
| 11A | ONKYO sound system, DVD, cdrw, speakers | 1 |
| 12A | Scanners, Epson, Fujitso | 8 |
| | Dell server power edge 1400 | 1 |
| | Copier | 1 |
| | Printers, photo, inkjet | 8 |
| 126 | Printers, laser, (Canon, Epson) | 10 |
| 127 | Canon Fax | 1 |
| | HP Plotter Electro Static 500PS | 1 |
| | Nikon Camera | 1 |
| | External Hard Drive Maxtor | 3 |
| | Polycom Speaker phone | 2 |
| 128 | Sony 50" TV | 1 |
| 129 | Panasonic Flat TV | 1 |
| 9 | Panasonic Phone System high bnd digital | 1 |
| 130 | Panasonic Phones | 25 |
| | Assorted software for production, animations | |
| | Post production software (not disclosed) | |

AW461

# ToyQuest
## 2228 Barry Ave.
## Los Angeles, CA

### Assets Inventory

### *Office Furniture*

| NO | Description | Qty. |
|----|-------------|------|
| 1 | Work station, modular furniture, L shape desk with credenza and book shelf (wood and plexiglass) | 4 |
| 2 | Office desks and return.  Book shelves, file cabinet | 8 |
| 3 | Ping Pong Table | 1 |
| 4 | Basket Ball Hoop | 1 |
| 5 | Office High back chairs | 28 |
| 6 | Couches (canvas) and love seat | 3 |
| 7 | Coffee table | 2 |
| 8 | Conference Table and 10 chairs and side table | 1 |
| 9 | Bean bag chairs | 11 |
| 10 | Kitchen equipment; refrigerator, coffeemaker, microwave, table and chairs | |
| 11 | Couches corner unit and coffee table | |
| 12 | Assorted electronic tools | |
| 13 | Assorted toys and display | |

AW462

<u>Bills to Purchase</u>

Phones:      Account #011790110281693004 (Verizon)
               Cellular – Account #493020121 (T-Moble) and #828388772 (AT&T)
               Account #995718753 (AT&T)

COVAD dsl – Account #590373

UPS – Account #E13A05

Pacific Alarm System account– Customer #16793

Blue Cross account– Group #285554

Kansas Communications phone acct– Account #001 0803 506807604

Excel phone– Account #12000006608

DWP – Account #4480769402229000000101 & 4480769402229000000901

Time Warner cable– Account #8448200190791573

Sirius music – Account #1200567211

Tivo – Account #0011032676

Gas Company – Account #03738969041

American Express – Primary Account #378207594142007

Bentonville phone  – Account #60103-147286

discover.com account

Case No. CV 06-1382 RSWL (CWx)  - SLB  v. Wham-O, Inc. – **only the appellate rights**

So. Cal. Disposal trash – Account #2206

AW463